UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARLEN CORDOVA,

              Plaintiff,             Case No.

v.                                 Hon.

C&M AUTO SALES, INC., a Michigan
Corporation, FIRST AUTOMOTIVE
SERVICE CORPORATION, a New
Mexico Corporation and CREDIT
ACCEPTANCE CORPORATION, a
Michigan Corporation,

              Defendants.

_____/

| | |
|---|---|
| DANI K. LIBLANG (P33713)<br>MICHAEL L. ROWADY (P56983)<br>THE LIBLANG LAW FIRM, P.C.<br>Attorneys for Plaintiff Marlen Cordova<br>346 Park St., Suite 200<br>Birmingham, MI 48009<br>(248) 540-9270<br>danil@liblanglaw.com<br>michaelrowady@liblanglaw.com | STEPHEN W. KING (P56456)<br>KING AND MURRAY PLLC<br>Attorneys for Defendant Credit<br>Acceptance Corporation<br>355 S. Old Woodward, Suite 100<br>Birmingham, MI 48009<br>(248) 792-2397<br>sking@kingandmurray.com |

_____/

## NOTICE OF REMOVAL

Defendant Credit Acceptance Corporation ("Credit Acceptance"), by counsel, and pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, hereby removes the above-entitled action, which is currently pending in the Wayne County

Circuit Court (Case No. 14-007218-NZ), to the United States District Court for the Eastern District of Michigan, Southern Division and states as follows:

## Background

1.      On June 4, 2014, Plaintiff Marlen Cordova ("Plaintiff") filed a nine-count complaint ("Complaint") naming Credit Acceptance as defendant. (A copy of Plaintiff's Complaint is attached as **Exhibit A**.)

2.      In the Complaint, Plaintiff asserts numerous claims which relate to the January 15, 2014 purchase of a 2008 GMC Acadia from Defendant C&M Auto Sales, Inc. Credit Acceptance provided indirect financing to Plaintiff. For example, Plaintiff alleges that Credit Acceptance violated the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq.*, by not providing various disclosures and notices. (Compl. ¶¶ 32-37).

3.      Credit Acceptance was served with a copy of the Complaint by certified mail on June 19, 2014. The Summons, which was not served, and Complaint constitute "all process, pleadings and orders served upon" Credit Acceptance in this action to date. *See* 28 U.S.C. § 1446(a).

4.      Upon information and belief, none of the other Defendants have been served with a copy of the Summons and Complaint. Thus, consent is not required at this time.

## **Timeliness of Removal**

5.      Credit Acceptance received notice of this action through the purported service of the Complaint via certified mail on June 19, 2014. Therefore, this notice of removal is timely under 28 U.S.C. § 1446(b) because less than 30 days have passed since Credit Acceptance was served with Plaintiff's Complaint.

## **Removal Jurisdiction – Federal Question**

6.      This action is properly removable under 28 U.S.C. § 1441 because this Court has original jurisdiction of this case under 28 U.S.C. § 1331, which provides in pertinent part: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

7.      In Count II of the Complaint, Plaintiff asserts a claim for violation of TILA. Plaintiff alleges, in part, that Credit Acceptance violated TILA ". . . by failing to comply with the disclosure requirements of 15 USC 1631, 1632 and 1638, and Regulation Z, 12 CFR 226.17 and 226.18." (Compl. ¶ 33.) In addition, Plaintiff also alleges, at least, nine other violations of TILA. (Compl. ¶¶ 34-36.) Accordingly, this is a civil action "arising under the Constitution, laws, or treaties of the Unites States" pursuant to Section 1331, and removal is appropriate pursuant to 28 U.S.C. §§ 1441, 1446.

8.     Removal to this Court is proper as the United States District Court for the Eastern District of Michigan, embraces the Wayne County Circuit Court where the state court action was filed.

### Notice to State Court and Plaintiff

9.     Pursuant to 28 U.S.C. §1446(d), Credit Acceptance is promptly providing written notice of this removal to counsel for Plaintiff and will promptly file a copy of this Notice of Removal with the Clerk of the Wayne County Circuit Court.

WHEREFORE, Defendant Credit Acceptance Corporation respectfully requests that the above-entitled action be removed from the Wayne County Circuit Court to this Court.

KING AND MURRAY PLLC

By: /s/ Stephen W. King
Stephen W. King (P56456)
355 S. Old Woodward, Suite 100
Birmingham, Michigan 48009
sking@kingandmurray.com
Tel: (248) 792-2398/Fax: (248) 646-8747

Date: June 24, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2014, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing by electronic mail to all counsel of record. I also mailed the foregoing document, via first-class mail, to all counsel of record.

By: /s/ Cathy Conti _____
Cathy Conti
355 S. Old Woodward, Suite 100
Birmingham, Michigan 48009
cconti@lennonlawpllc.com
Tel: (248) 792-2398/Fax: (248) 646-8747

# EXHIBIT

# A

## STATE OF MICHIGAN

### IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE

MARLEN CORDOVA,

     Plaintiff,

-vs-

C & M AUTO SALES, INC., a Michigan
Corporation, FIRST AUTOMOTIVE SERVICE
CORPORATION, a New Mexico Corporation,
and CREDIT ACCEPTANCE CORPORATION,
a Michigan Corporation,

     Defendants.

HON.
Case No. 14-     NZ

14-007218-NZ

FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/4/2014 12:18:44 PM
CATHY M. GARRETT

THE LIBLANG LAW FIRM, P.C.
BY: DANI K. LIBLANG (P33713)
     MICHAEL L. ROWADY (P56983)
Attorneys for Plaintiff
346 Park Street, Suite 200
Birmingham, MI 48009
(248) 540-9270

### COMPLAINT AND JURY DEMAND

There is no other civil action between these parties arising out of the same transaction
or occurrence as alleged in this complaint pending in this court, nor has any such
action been previously filed and dismissed or transferred after having been assigned
to a judge, nor do I know of any other civil action, not between these parties, arising
out of the same transaction or occurrence as alleged in this complaint that is either
pending or was previously filed and dismissed, transferred, or otherwise disposed of
after having been assigned to a judge in this court.

Plaintiff, by her attorneys, The Liblang Law Firm, P.C., complains against the above named

Defendants, as follows:

### GENERAL ALLEGATIONS

1.     Plaintiff is a resident of the City of Ann Arbor, Washtenaw County, Michigan.

2.     Defendant, C & M Auto Sales, Inc. ("Dealer" or "C & M"), is a corporation

authorized to do business in the State of Michigan and at all times relevant hereto, was engaged in

the business of selling, leasing and servicing used motor vehicles, with its principal place of business

located in the City of Detroit, Wayne County, Michigan.

3.      Defendant First Automotive Service Corporation ("Warrantor" or "First Automotive"), is a corporation authorized to do business in the State of Michigan and at all times relevant hereto, was engaged in the business of providing and administering extended warranties and services contracts on used motor vehicles and carried on a continuous and systematic portion of its business throughout the State of Michigan, including Wayne County.

4.      Defendant, Credit Acceptance Corporation ("Finance Co." or "CAC"), is a Corporation duly authorized to conduct business in the State of Michigan and, at all times relevant hereto, was in the business of financing used motor vehicles, and carried on a continuous and systematic portion of its business throughout the State of Michigan, including Wayne County.

5.      At all times relevant hereto, Defendant Dealer and Defendant Finance Co., in the ordinary course of their business, regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or by written agreement which is payable in more than four installments.

6.      Upon information and belief, Defendants Dealer and Finance Co. are closely connected entities with respect to the subject sales transaction. See, e.g., *Cessna Finance Corp v Warmus*, 159 Mich App 706, 709, 407 NW2d 66, 68 (1987).

7.      On or about January 15, 2014, Plaintiff purchased a 2008 GMC Acadia, VIN 1GKER23788J171153 (the "vehicle"), from Defendant Dealer under a retail installment sales contract, which contract was assigned to Defendant Finance Co. (see, Retail Installment Contract "RISC," Ex. A).

8.      The vehicle is a consumer good and was purchased by Plaintiff primarily for personal, family and household purposes.

9.      Defendant Finance Co. is subject to all of Plaintiff's claims and defenses against Defendants arising out of the above retail installment transaction, pursuant to MCLA 492.114a(b), 16 CFR 433, the common law of assignment, and the contract language, which provides in pertinent part:

2

2:14-cv-12482-PJD-DRG   Doc # 1   Filed 06/24/14   Pg 9 of 46   Pg ID 9

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF, RECOVERY HEREUNDER BY THE DEBTOR SHALL NT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

(See, Ex. A).

10.    Where, as here, a defective or non-conforming product is subject to a finance contract, the seller must indemnify a plaintiff who successfully asserts claims for breach of warranty and/or revocation. See, e.g., *Lycos v Gray Mobile Home Sales, Inc,* 76 Mich App 165, 167-168; 256 NW2d 63, 65 (1977).

11.    On or about February 13, 2014, within the 30-day contractual time for doing so, Plaintiff notified Defendant CAC in writing of her rejection of the arbitration clause contained in the RISC (see, Correspondence dated February 13, 2014, Ex. B).

12.    At the time of delivery, the vehicle was represented to have 123,764 miles on its odometer, and was covered by a twenty-four month, 24,000 mile written "Superior Protection Plan" Vehicle Service Contract for which Plaintiff paid an additional $1,580 over and above the purchase price (see, RISC, Ex. A, ¶1-d; Superior Protection Plan Contract, Ex. C).

13.    In order to induce Plaintiff to purchase the vehicle, Defendant Dealer represented that the vehicle was in good mechanical condition with "no issues," and that the Vehicle Service Contract would cover "any issue" that may come up with the vehicle during the 24-month/24,000 mile coverage period, including any problems with the engine or transmission.

14.    In order to induce Plaintiff to purchase the vehicle, Defendant Dealer further represented that a noise that was heard on the test drive was because the vehicle had needed oil, that oil had been added, and that Plaintiff should "just give it 2-3 days and the noise will go away."

15.    Defendant Dealer did not give Plaintiff a copy of the written disclosures required by 15 USC 1638(a) in a form for Plaintiff to keep prior to the time that Plaintiff had actually signed the RISC.

16.    Following delivery and within the time and mileage parameters of the foregoing Service Contract, to-wit: January 18, 2014, only three days after her purchase, Plaintiff took the

3

vehicle to a licensed repair facility, Packard Auto Repair, Inc., because the vehicle was continuing to make the noise that Defendant Dealer had represented would "go away" after "2-3 days."

17.     Among the problems diagnosed and repaired by Packard Auto Repair, Inc., was a broken water pump which was leaking, broken power steering gear which was leaking, and a bad engine oil leak. Both the water pump and steering gear need replacing for a total of $1,232.63, however, the engine leak was not fixed because Packard Auto Repair "would need to clean engine to pinpoint the source of the leak" (see, Repair Order No. 7374, Packard Auto Repair, LLC, dated January 18, 2014, see, Ex. D).

18.     Packard Auto Repair, LLC, advised Plaintiff that Defendant Warrantor had denied the foregoing repair claim on the grounds that the described defects were allegedly "preexisting conditions" and therefore, "[h]aving just purchased the vehicle, we recommend that Ms. Cordova obtain legal advice" (see, Correspondence from Packard Auto Repair, LLC, Ex. E).

19.     On or about January 24, 2014, Plaintiff returned to Defendant Dealer and advised Defendant Dealer that the vehicle was in the shop due to the noise that Defendant Dealer had said would "go away" but was, in fact, due to the mechanical issues described above, and that the Superior Protection Plan coverage had been denied.

20.     Despite the foregoing diagnosis and the fact that the defect or condition was reported to Defendant Dealer and Defendant Warrantor within the time and mileage parameters of the aforesaid written warranty, Defendants failed and/or refused to provide repairs under the Service Contract.

21.     At the time of the aforesaid sale, Defendant Dealer did not disclose any prior defects or non-conformities as set forth above but, instead, affirmatively represented that the vehicle had "no issues," and that the noise would "go away" after 2-3 days, making the aforesaid omissions and affirmative representations for the purpose of inducing Plaintiff to purchase the subject vehicle at the agreed upon price.

4

22.     As a result of the foregoing defects and non-conformities, and Defendants' refusal to repair the same under warranty, Plaintiff's faith in the vehicle has been irretrievably shaken, Plaintiff has been deprived of the benefit of her bargain and the use and value of the vehicle to Plaintiff has been substantially impaired in that Plaintiff has been unable to use the vehicle.

23.     Despite Plaintiff's demand, Defendants have failed and/or refused to refund the purchase price of the vehicle in accordance with MCLA 440.2608 and 15 USC 2301, *et seq.*

24.     Plaintiff seeks damages in excess of $25,000 and/or equitable relief and the matter is otherwise within the jurisdiction and venue of the Court.

## COUNT I

### FRAUD AND/OR MISREPRESENTATION
### (DEFENDANTS DEALER AND FINANCE CO.)

25.     Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

26.     On the aforesaid date, Defendants Dealer and Finance Co. offered to sell the subject vehicle to Plaintiff, making the representations set forth above when, in fact, the representations were false, as set forth above.

27.     Defendants made the representations set forth above with knowledge that the same were false and/or with the knowledge that Plaintiff would rely on said representations, for the purpose of inducing Plaintiff to purchase the vehicle at a price far in excess of the fair market value of the vehicle in its actual condition.

28.     Plaintiff, unaware of the true facts of the matter and then reasonably relying upon Defendants' representations as aforesaid, accepted delivery of the vehicle from Defendant Dealer.

29.     As a result of Defendants' aforesaid wrongful conduct, Plaintiff has been deprived of the benefit of her bargain, and was deceived into accepting the vehicle at an excessive price, has incurred and continues to incur excess finance charges, and has overpaid for insurance and taxes, has incurred or will incur damage to her credit rating, has incurred or will incur the cost and inconvenience of obtaining alternative transportation, towing fees, has been greatly shocked and angered by Defendants' conduct and the resulting damages she has sustained, and Plaintiff has

5

sustained other incidental and consequential damages, including but not limited to costs and attorney fees in attempting to obtain relief from Defendants' wrongful conduct.

30.     Defendant Finance Co., as the holder and assignee of the subject RISC, is subject to all of the aforesaid claims and defenses.

WHEREFORE, Plaintiff prays that this Honorable Court enter Judgment against Defendants, jointly and severally, as follows:

a.     Order that Defendants accept return of the subject vehicle and refund Plaintiff's down payment and payments made, together with incidental and consequential damages and cancel the subject RIC;

b.     Award Plaintiff damages in whatever amount above $25,000 she is found to be entitled, plus interest, costs and reasonable attorney fees; and

c.     Such other and further relief as this Court deems appropriate.

## COUNT II

### TRUTH IN LENDING ACT (15 USC 1601, *et seq.*) (DEFENDANTS DEALER AND FINANCE CO.)

31.     Plaintiff incorporate by reference all facts and allegations set forth in this Complaint.

32.     This Court has jurisdiction to decide claims brought under the Truth in Lending Act, 15 USC 1601, *et seq.*, pursuant to 15 USC 1640(e).

33.     Defendant Dealer and Defendant Finance Co. violated the TILA by failing to comply with the disclosure requirements of 15 USC 1631, 1632 and 1638, and Regulation Z, 12 CFR 226.17 and 226.18.

34.     Defendants violated the TILA by failing to provide Plaintiffs with the disclosures required by 15 USC 1628(a), including but not limited to, the disclosures required by 15 USC 1638(a)(3), (4), (5), (6) and (9) and, further, violated Regulation Z, 12 CFR 226.17(a).

35.     Defendants violated the TILA by failing and/or refusing to provide Plaintiffs with the disclosures required by 15 USC 1638(a) before credit was extended as required by 15 USC

6

1638(b)(1), and before consummation of the transaction a required by Regulation Z, 12 CFR 226.17(b).

36.     Defendants violated the TILA in the following additional particulars, not to the exclusion of others:

        a.    By failing to disclose the true cash price of the vehicle;

        b.    By failing to accurately disclose the difference between the market value of the vehicle and the cash price set forth in the contract, which difference amounts to a hidden finance charge;

        c.    By failing to accurately disclose the cost of the Service Contract and the GAP insurance as a finance charge;

        d.    By failing to accurately disclose the amount of sales tax attributable to the difference market value of the vehicle and the cash price set forth in the contract, which sales tax amounts to a hidden finance charge;

        e.    By failing to disclose the amount financed; and

        f.    By failing to disclose the finance charge;

        g.    By failing to accurately disclose the down payment.

37.     Violation of this Act is also a contemporaneous violation of the Michigan Consumer Protection Act by Defendant, and as a result of Defendants' violations of the Act, Plaintiffs are entitled to recover the greater of their actual damages or $250.00, together with reasonable costs and attorney fees.

WHEREFORE, Plaintiffs pray for Judgment against Defendants Dealer and Finance Co., jointly and severally, as follows:

        a.    A declaratory judgment that Defendants has violated the TILA;

        b.    An award of actual damages in whatever amount above $25,000 Plaintiffs are found to be entitled pursuant to 15 USC 1640(a)(1);

7

c.      An award of statutory damages in the amount of twice the finance charge not to exceed $1000 in accordance with 15 USC 1640(a)(2);

d.      An award of costs and reasonable attorneys fees in accordance with 15 USC 1640(a)(3);

e.      Equitable relief, including but not limited to, rescission, and/or reformation of the subject finance contract;

f.      Such other and further relief as this Court deems appropriate.

## COUNT III

### BREACH OF EXPRESS WARRANTIES
### (DEFENDANTS DEALER, WARRANTOR AND FINANCE CO.)

38.     Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

39.     This is a "transaction in goods" to which MCLA 440.2102 is applicable.

40.     Plaintiff's purchase of the subject vehicle was accompanied by an express warranty, written and otherwise offered by the Manufacturers and Dealer, whereby said warranty was part of the basis of the bargain of the contract upon which Plaintiff relied, between Plaintiff and Manufacturers/Dealer for the sale of the the subject vehicle.

41.     Said vehicle was not as warranted and represented in that the vehicle has the defects or conditions described above.

42.     As a result of the aforesaid defects and non-conformities, said vehicle cannot be reasonably relied on by Plaintiff for the ordinary purpose of safe, reliable, and efficient transportation.

43.     Plaintiff has provided the Defendants with sufficient opportunities to repair or replace the subject vehicle.

44.     Plaintiff has reasonably met all obligations and pre-conditions as provided in the express warranty.

45.     Defendants have failed to adequately repair the subject vehicle and/or have not repaired the subject vehicle in a timely fashion, and the vehicle remains in a defective condition.

8

46.     Even though the express warranty provided to Plaintiff limited Plaintiff's remedy to repair and/or adjust defective parts, the subject vehicle's defects have rendered the limited warranty ineffective to the extent that the limited repair and/or adjustment of defective parts failed of its essential purpose, pursuant to MCLA 440.2719(2) and/or the above remedy is not the exclusive remedy under MCLA 440.2719(1)(b).

47.     The subject vehicle continues to contain defects which substantially impair the use and value of the vehicle to Plaintiff.

48.     That these defects could not reasonably have been discovered by Plaintiff prior to Plaintiff's acceptance of the subject vehicle.

49.     Defendants induced Plaintiff's acceptance of the subject vehicle by agreeing, by means of the express warranty, to remedy, within a reasonable time, those defects which had not been or could not have been discovered prior to acceptance.

50.     As a result of its many defects, the Plaintiff has lost faith and confidence in the subject vehicle and the Plaintiff cannot reasonably rely upon the vehicle for the ordinary purpose of safe, reliable, and efficient transportation.

51.     As a direct and proximate result of Defendants' aforesaid breaches of the express warranties, Plaintiff has suffered damages and will continue to suffer damages, including but not limited to, loss of use of the subject vehicle, the cost and inconvenience of obtaining alternative transportation, interest and sales tax, insurance, and Plaintiff will suffer future damages, including but not limited to, the damages herein stated, and diminished resale value of the subject vehicle, together with cost and attorney fees in attempting to obtain relief from Defendant's wrongful conduct.

52.     Defendant Finance Co., as the holder of the RISC covering the vehicle, is subject to all of the foregoing claims.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, as follows:

A.      Money damages in whatever amount above $25,000, Plaintiff is found to be entitled, plus interest, costs and reasonable attorney fees;

B.      Equitable relief, including but not limited to, repair of the subject vehicle, extension of the express and implied warranties which are or were applicable to the subject vehicle, in the event that Plaintiff is not found to be entitled to revocation; and

C.      Such other and further relief as this Court deems just.

## COUNT IV

### BREACH OF EXTENDED SERVICE PLAN
### (DEFENDANTS DEALER AND FIRST AUTOMOTIVE)

53.     Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

54.     Plaintiff purchased the above described Service Contract from Defendant Dealer for good consideration in the amount of $1,580.00.

55.     Under the Service Contract, Plaintiff was entitled to repair of the aforesaid engine problems for a period of 24 months or 24,000 miles.

56.     Defendants C & M Auto Sales and First Automotive have breached the Service Contract by refusing to repair the vehicle and/or failing to authorize repair of the vehicle within a reasonable time.

57.     As a direct and proximate result of Defendants' breach of the Service Contract, Plaintiffs have suffered the damages hereinbefore set forth.

WHEREFORE, Plaintiffs prays that this Honorable Court grant judgment against Defendant in whatever amount above than $25,000 Plaintiff is found to be entitled, plus interest, costs and reasonable attorneys fees, together with such other and further relief as this Court deems just.

## COUNT V
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (DEFENDANT DEALER)

58.     Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

59.     Defendant Dealer is a "merchant" with respect to motor vehicles under the Michigan Uniform Commercial Code, MCLA 440.2104.

10

60.    The subject vehicle was subject to implied warranties of merchantability under MCLA 440.2314.

61.    The subject vehicle was not fit for the ordinary purpose for which such goods are used, did not conform to the product description, and would not pass without objection in the trade for the product description.

62.    The defects and problems hereinbefore described rendered the subject vehicle unmerchantable.

63.    Defendant failed to adequately remedy the defects in the subject vehicle within a reasonable time; and the vehicle continues to be in unmerchantable condition.

64.    As a direct and proximate result of Defendant's breaches of the implied warranty of merchantability, Plaintiff has suffered and will continue to suffer the damages herein stated.

65.    Defendant Finance Co., as the holder of the RISC covering the vehicle, is subject to all of the foregoing claims.

WHEREFORE, Plaintiff prays for judgment against Defendant Dealer, as follows:

A.    Money damages in whatever amount above $25,000, Plaintiff is found to be entitled, plus interest, costs and reasonable attorney fees;

B.    Equitable relief, including but not limited to, repair of the subject vehicle, extension of the express and implied warranties which are or were applicable to the subject vehicle, in the event that Plaintiff is not found to be entitled to revocation; and

C.    Such other and further relief as this Court deems just.

## COUNT VI

## REVOCATION OF ACCEPTANCE AND/OR INDEMNIFICATION

66.    Plaintiff incorporates by reference all facts and allegations set forth in this complaint.

67.    The defects and non-conformities described above were latent and not readily discoverable by Plaintiff upon reasonable inspection and, further, Defendants represented that the aforesaid defects and non-conformities would be cured within a reasonable time.

11

68.     Despite reasonable opportunity, Defendants have failed and/or refused to cure the aforesaid defects or non-conformities.

69.     The defects or non-conformities prevent the vehicle from conforming to the aforesaid express written warranty and, further, substantially impair the use, value and safety of the vehicle to Plaintiff.

70.     Plaintiff has previously notified Defendants of said non-conformities and Plaintiff's intent to revoke acceptance pursuant to MCLA 440.2608 and demand return of the purchase price of said vehicle.

71.     Defendants have nevertheless refused to accept return of the vehicle and have refused to refund Plaintiff's purchase price.

72.     Plaintiff hereby offers again to tender the vehicle, in exchange for a refund of the purchase price and cancellation of the contract, plus incidental and consequential damages.

73.     Defendant Finance Co., as the holder of the RISC covering the vehicle, is subject to all of the foregoing claims.

WHEREFORE, Plaintiff prays that this Honorable Court enter its Order:

A.      Requiring Defendants to accept return of the subject vehicle and refund Plaintiff's purchase price, together with incidental and consequential damages, interest, costs and reasonable attorney fees;

B.      Requiring Defendants to repurchase the subject vehicle and requiring Defendants to indemnify and hold Plaintiff harmless under the retail installment sales contract covering the subject vehicle;

C.      Costs, interest, and actual attorney fees; and

D.      Such other relief this Court deems just and equitable.

**COUNT VII**
**LIABILITY UNDER MAGNUSON-MOSS**
**WARRANTY ACT (15 USC §2301 ET SEQ)**

74.     Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

12

75.     This Court has jurisdiction to decide claims brought under 15 USC §2301 et seq. by virtue of 15 USC §2310(d)(1)(A).

76.     Plaintiff is a consumer as defined in 15 USC §2301(3).

77.     Defendants are suppliers and warrantors as defined in 15 USC §2301(4)(5).

78.     The aforedescribed motor vehicle is a consumer product as defined in 15 USC §2301(6).

79.     The aforedescribed vehicle was delivered subject to a written warranty and/or a service contract as those terms are defined in 15 USC 2301(6) and 2301(8), respectively.

80.     15 USC §2308(a) prohibits Defendant from disclaiming the implied warranty of merchantability and 15 USC §2308(c) renders any attempted disclaimer invalid.

81.     In connection with the aforesaid defects or non-conformities, which occurred during the time and mileage parameters of Defendant Warrantor's written warranty or service contract, Defendants failed to repair same under the warranty.

82.     15 USC §2310(d)(1) and (d)(2) permit Plaintiff to bring an action against Defendants for any breach of express or implied warranty arising under state law, as well as for any violation of the Magnuson-Moss Warranty Act, including the FTC rules promulgated thereunder.

83.     The aforesaid sale was subject to the FTC Used Motor Vehicle Trade Regulation Rules ("FTC Used Car Rules").

84.     Defendant Dealer breached the FTC Used Car Rules in the following particulars:

      a.     Failing to properly fill in and display in the window of the subject vehicle a "Buyers Guide," as required by the FTC Used Motor Vehicle Trade Regulation Rule, 16 CFR 455;

      b.     Misrepresenting the mechanical condition of the vehicle, in violation of 16 CFR 455.1(a)(1);

13

c.     Failing to make available, prior to sale, the terms of any written warranty or service contract offered in connection with the sale of the vehicle, in violation of 16 CFR 455.1(b)(2);

d.     Making statements or taking other actions altering or contradicting the disclosures required by §§ 455.2 and 455.3, in violation of 16 CFR 455.4.

85.     Defendants aforesaid violations support Plaintiff's claims for common law fraud, as hereinbefore set forth.

86.     Defendants' aforesaid violations negate any attempt to disclaim the implied warranties of merchantability, rendering such disclaimers unenforceable under federal law, which law preempts state law to the contrary.

87.     Defendants' aforesaid violations constitute a failure to provide promised benefits under the Michigan Consumer Protection Act, specifically MCLA 445.903(y).

88.     Defendants' aforesaid violations are actionable under the Magnuson-Moss Warranty Act, 15 USC 2310(d)(1).

89.     As a result of Defendants' breaches and violations of the FTC Used Car Rules as set forth above, Plaintiff has sustained the damages enumerated above.

90.     As a result of Defendant Dealers' breaches of the Act as set forth above, Plaintiff has sustained the damages enumerated in this Complaint.

91.     Defendant Finance Co., as the holder of the RISC covering the vehicle, is subject to all of the foregoing claims.

WHEREFORE, Plaintiff prays that this Honorable Court enter its Order requiring Defendants to cancel the subject contract, refund Plaintiff's purchase price, together with interest, finance charges, taxes, insurance premiums, statutory interest, costs and actual attorney fees as provided by 15 USC §2310(d)(2) or in the alternative, that Plaintiffs be awarded damages in whatever amount above $25,000 Plaintiff is found to be entitled, plus interest, costs and actual attorney fees.

14

**COUNT VIII**
**VIOLATION OF MCLA 445.901, ET. SEQ.**
**(MICHIGAN CONSUMER PROTECTION ACT)**

92.     Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

93.     Plaintiff is a "person" as defined in the Michigan Consumer Protection Act, MCLA 445.902(c).

94.     The transactions complained of herein constitute "trade or commerce" as defined in the Michigan Consumer Protection Act, MCLA 445.902(d).

95.     In the course of the transactions which are the subject of this lawsuit, Defendants engaged in the following unfair, unconscionable, or deceptive methods, acts, or practices:

a.     Failing to disclose material facts, including but not limited to, the aforesaid defects or non-conformities described in this Complaint;

b.     Representing, either affirmatively or by omission, that the subject vehicle had been properly inspected and prepared prior to delivery, when in fact, the vehicle had not been adequately or properly inspected and prepared;

c.     Represented the subject vehicle to be of good, merchantable quality, free of defects, when in fact it was not;

d.     Failing to adequately and properly inform Plaintiff of her rights and remedies with respect to the transactions which are the subject of this Complaint;

e.     Misrepresenting Plaintiff' rights and/or failing to advise Plaintiff of remedies with respect to the transactions which are the subject of this Complaint, as hereinbefore alleged;

f.     Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without clearly and conspicuously disclosing same;

g.     Attempting to disclaim or limit the implied warranty of merchantability and fitness for use without obtaining Plaintiff's specific consent to the disclaimer or limitation;

h.     Representing that the repairs could be performed properly, within a reasonable time, when Defendants knew, or in the exercise of reasonable care, should have known that this was not the case;

i.     Refusing and/or failing to provide promised benefits, including but not limited to warranty repairs;

j.     Refusing and/or failing to provide promised benefits arising by operation of law, as hereinbefore set forth;

k.     Failing to offer a refund of the purchase price of the subject vehicle in accordance with the applicable law and/or warranties;

15

l.      Failing to promptly refund Plaintiff' money and/or restore her property to him upon her rightful revocation and cancellation of the subject transactions;

m.      Failing to disclose material information, including but not limited to, the true facts engine noise described above.

96.     The above described conduct violated the Michigan Consumer Protection Act, specifically but not limited to MCLA 445.903 and the sub-paragraphs contained therein.

97.     Upon information and belief, the aforesaid violations were not due to a bona fide error, inasmuch as Defendants failed to have any procedures in place designed to prevent the aforesaid violations and, further, engaged in the same unfair and deceptive acts or practices in connection with the sales, leases and/or repairs of numerous other vehicles.

98.     As a result of the Defendant's actions above Plaintiff has sustained a loss within the meaning of the Michigan Consumer Protection Act and also are entitled to statutory damages and attorney fees as provided in the Michigan Consumer Protection Act, specifically, MCLA 445.911.

99.     Defendant Finance Co., as the holder of the RISC covering the vehicle, is subject to all of the foregoing claims.

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

A.      Money damages in whatever amount above $25,000, Plaintiff is found to be entitled, plus interest, costs and reasonable attorney fees as permitted by statute;

B.      Equitable relief, including but not limited to, rescission or reformation of the subject contract or, alternatively, repair of the subject vehicle, extension of the express and implied warranties, and service contracts which are or were applicable to the subject vehicle, in the event that Plaintiff is not found to be entitled to rescission; and

C.      Such other and further relief as this Court deems just.

## COUNT IV

### HOLDER LIABILITY - DEFENDANT FINANCE CO.

100.    Plaintiff incorporates by reference all facts and allegations set forth in this Complaint.

101.    Defendant Finance Co. is subject to all of Plaintiff's claims and defenses against Defendant Dealer arising out of the above retail instalment transaction, pursuant to the aforesaid

16

assignment, as well as MCLA 492.114a(b), 16 CFR 433, and the contract language, which provides in pertinent part:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

WHEREFORE, Plaintiff prays for Judgment against Defendant Finance Co. as follows:

A.     Money damages in an amount equal to Plaintiff's payments under the subject contract, plus interest, costs and attorney fees; and

B.     Cancellation of the subject contract; and

C.     That Defendants be ordered to delete any neutral or negative credit information from Plaintiff's credit history arising out of the subject transaction; and

D.     That Defendants be permanently enjoined from reporting the subject transaction on Plaintiff's credit history; and

E.     Such other and further relief as this Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in the above entitled cause.

Respectfully submitted,

THE LIBLANG LAW FIRM, P.C.,

BY: _____
DANI K. LIBLANG (P33713)
Attorneys for Plaintiffs
346 Park Street, Suite 200
Birmingham, MI 48009
(248) 540-9270

DATED: June 4, 2014

17

14-007218-NZ
FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/4/2014 12:18:44 PM
CATHY M. GARRETT

# EXHIBIT A

0027331157-1

| | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

## RETAIL INSTALLMENT CONTRACT

**ACCOUNT #** ▓▓▓                                   **LOT #** 424

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| MARLEN CORDOVA <br> ▓▓▓▓ <br> ANN ARBOR, MI 48108 | N/A | C & M AUTO SALES, INC. <br> 4605 LIVERNOIS <br> DETROIT, MI 48210 |

"You" and "Your" mean each Buyer above, jointly and severally. "Us" and "We" mean Creditor-Seller and Creditor-Seller's assignee. You may buy the Vehicle described below for cash or credit. The cash price is shown below as the "Cash Price". The credit price is shown below as "Total Sale Price". You have agreed to buy the Vehicle from Us on credit for the Total Sale Price. You acknowledge delivery and acceptance of the Vehicle in good condition and repair. You promise to pay Us all amounts due under this Retail Installment Contract ("Contract"), including the Total Sale Price, in accordance with the payment schedule shown in the Truth in Lending Disclosures shown below. You also agree to the terms and conditions (including the Truth in Lending Disclosures) and on the additional pages of this Contract. The Annual Percentage Rate may be negotiable with Us.

| | Year and Make | Model and Body Style | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| Used | 2008 GMC | Acadia 4D Utility | WHITE | 1GKER23788J171153 | 123,764 |

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE <br> The cost of Your credit as a yearly rate. | FINANCE CHARGE <br> The dollar amount the credit will cost You. | Amount Financed <br> The amount of credit provided to You or on Your behalf. | Total of Payments <br> The amount You will have paid after You have made all payments as scheduled. | Total Sale Price <br> The total cost of Your purchase on credit, including Your down payment of $ 3,300.00 is |
|---|---|---|---|---|
| 23.99 % | $ 8,519.58 | $ 15,089.70 | $ 23,609.28 | $ 26,909.28 |

Payment Schedule: Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 48 | $ 491.86 | • February 15, 2014 and same date of each following month. |

Security: You are giving a security interest in the goods or Vehicle being purchased.
Late Charge: If a payment is more than 10 days late, You will be charged $15 or 5% of the payment, whichever is greater.
Prepayment: If You pay off early, You may be entitled to a refund of part of the Finance Charge.
Additional Information: Please read this Contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGES CAUSED TO OTHERS IS NOT INCLUDED.**

PROPERTY INSURANCE: You must insure the Vehicle securing this Contract. YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANYONE YOU CHOOSE WHO IS REASONABLY ACCEPTABLE TO US. The collision coverage deductible may not exceed $500.

YOU HAVE THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM THE MOTOR VEHICLE PHYSICAL DAMAGE INSURANCE REQUIRED UNDER THIS CONTRACT IS TO BE OBTAINED.

OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT: Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by signing below You are indicating that You voluntarily elect to buy an optional extended warranty or service contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional extended warranty or service contract for details about coverage and duration.

Price $ 1,580.00    Term: 24 Mos.\ 24000 Miles  Company: First Automotive Service Corp

_Marlen Cordave_        01/15/2014
Buyer's Signature                Date          Buyer's Signature                Date

GAP PROTECTION: Optional Guaranteed Auto Protection (GAP) is not required to obtain credit. GAP protection will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line 4B of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If You want GAP protection, sign below.

Cost $ 599.00    Term: 48 Mos.    Provider: Western Diversified Services, Inc.

_Marlen Cordova_        01/15/2014
Buyer's Signature                Date          Buyer's Signature                Date

Buyer's Initials CMC
Buyer's Initials

MICHIGAN CREDIT ACCEPTANCE CORPORATION (06-12) <br> © 2012 Credit Acceptance Corporation. <br> All Rights Reserved.

PAGE 1 of 5

0027331157-2

## ITEMIZATION OF AMOUNT FINANCED

1. Cash Price - which includes 1(a) through 1(e): ........................................................ $ 17,686.70
   a. Motor Vehicle Cash Price .......................... $ 14,995.00
   b. Sales Tax .................................................. $ 911.70
   c. Accessories and Installation Charges ......... $ N/A
   d. Cost of Optional Extended Warranty or Service Contract* $ 1,580.00  Paid to the Company named on page 1
   e. Document Preparation Fee .......................... $ 200.00

2. Down-Payment Calculation:    **Cash Down Payment** .................................... $ 3,300.00 (A)
   Trade-In Description:    Gross Trade-In ............... $ N/A (B)
   Make  N/A
   Model  N/A     Payoff Made by Seller  $ N/A (C)
   Net Trade-In (if negative number, insert "0" in line 2(D) and itemize difference in 4(E) below) (B-C) ...... $ 0.00 (D)
   **Total Down Payment** ................... (A + D) $ 3,300.00 (2)

3. Unpaid Balance of Cash Price (1 minus 2) ................................................................... $ 14,386.70 (3)

4. Other Charges Including Amounts Paid to Others on Your Behalf:
   A. Cost of Required Physical Damage Insurance Paid to Insurance Company* ........ $ N/A (A)
   B. Cost of Optional GAP Protection Paid to      Western Diversified Servi - $ 599.00 (B)
   C. Cost of Fees Paid to Public Officials for Perfecting, Releasing or Satisfying a Security Interest ...... $ N/A (C)
   D. Cost of Fees Paid to Public Officials for Certificate of Title, License and Registration ............. $ 104.00 (D)
      Other Charges (Seller must identify who will receive payment and describe purpose)*
   E. to N/A _____ for lien or lease payoff ...................... $ N/A (E)
   F. to N/A _____ for N/A _____ $ N/A (F)
   G. to N/A _____ for N/A _____ $ N/A (G)
   H. to N/A _____ for N/A _____ $ N/A (H)
   Total of Other Charges and Amounts Paid to Others on Your Behalf .................................. $ 703.00 (4)

5. Less Prepaid Finance Charge .......................................................................................... $ N/A (5)

6. Amount Financed - Unpaid Balance (3 + 4 less 5) ........................................................ $ 15,089.70 (6)

7. Finance Charge ................................................................................................................. $ 8,519.58 (7)
   Time Balance (The Amount Financed plus the Finance Charge (6 + 7) ............................ $ 23,609.28
   *(NOTICE: A portion of these charges may be paid to or retained by Us.)

---

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

ARBITRATION NOTICE: PLEASE SEE PAGE 4 OF THIS CONTRACT FOR INFORMATION REGARDING THE AGREEMENT TO ARBITRATE CONTAINED IN THIS CONTRACT.

ADDITIONAL TERMS AND CONDITIONS: THE ADDITIONAL TERMS AND CONDITIONS, INCLUDING THE AGREEMENT TO ARBITRATE SET FORTH ON THE ADDITIONAL PAGES OF THIS CONTRACT ARE A PART OF THIS CONTRACT AND ARE INCORPORATED HEREIN BY REFERENCE.

**Warning: The insurance afforded hereunder does not cover liability for injury to persons or damage to property of others unless so indicated hereon.**

*NOTICE TO BUYER: Do not sign this Contract in blank. You are entitled to 1 true copy of the Contract You sign without charge. Keep it to protect Your legal rights.*

Buyer's Signature: x _____          Buyer's Signature: x _____

Seller  C & M AUTO SALES, INC.      By: _____     Title: AGENT

This Contract is signed by the Seller and Buyer(s) hereto this  15th  day of  January  , 2014

NOTICE OF ASSIGNMENT: The Seller has assigned this Contract to Credit Acceptance Corporation in accordance with the terms and conditions set forth on page 4 of this Contract. This assignment is without recourse. You must make all future payments to: CREDIT ACCEPTANCE CORPORATION, 25505 WEST TWELVE MILE ROAD-SUITE 3000, SOUTHFIELD, MICHIGAN 48034-8339, 1-(800)-634-1506.

Seller  C & M AUTO SALES, INC.      By: _____     Title: AGENT

*You agree to the terms of this Contract and acknowledge that You have received a copy of this Contract with blanks filled in and that You have read it and understand it.*

Buyer's Signature: x _____          Buyer's Signature: x _____

MICHIGAN CREDIT ACCEPTANCE CORPORATION (05-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.                    PAGE 2 of 5

0027331157-3

## ADDITIONAL TERMS AND CONDITIONS

Security Interest. You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You, and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

Late Charge. You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated on page 1 of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

Ownership and Risk of Loss. You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

Your Other Promises to Us. You promise that:
- You will not remove the Vehicle from the United States or Canada.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle in a trade or business without our written consent
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

Prepayment. You have the right to prepay Your account balance early without a penalty. If You prepay in full, You may be entitled to a refund credit of part of the pre-computed finance charge. This credit will be calculated in accordance with the actuarial method. We will apply the credit to the amount You owe Us or if You paid Us more than the amount owed to Us under this Contract, We will refund it to You. A minimum finance charge of $15 may be charged. We will not credit or refund amounts less than $1.00.

If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance, however a prepayment will not excuse any later scheduled payments. You must still make all scheduled payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

Required Physical Damage Insurance. You agree to have physical damage insurance covering loss or damage to the Vehicle for the term of this Contract. At any time during the term of this Contract, if You do not have physical damage insurance which covers both the interest of You and Us in the Vehicle, then We may buy it for You. If We do not buy physical damage insurance which covers both interests in the Vehicle, We may, if We decide, buy insurance which covers only our interest.

We are under no obligation to buy any insurance, but may do so if We desire. If We buy either of these coverages, We will let You know what type it is and the charge You must pay. The amount You must pay will be the premium for the insurance and a finance charge at the Annual Percentage Rate shown on this Contract. You agree to pay the amount and finance charge in equal installments along with the payments shown on the Payment Schedule.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment

Optional Insurance, Maintenance or Service Contracts. This Contract may contain charges for optional insurance, maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

Insurance, Maintenance, Service or Other Contract Charges Returned to Us. If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract or used to buy similar insurance which covers only our interest in the Vehicle. Any refund on optional insurance, maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

Default and Acceleration of the Contract. You will be in default if:
- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises You made in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. In figuring what You owe, We will give You a refund of part of the Finance Charge figured the same as if You had prepaid Your obligation under this Contract in full

Starter Interruption Device and GPS. You understand and agree that if You are in default, We may use any starter interruption device and/or global positioning system (collectively, the Device) installed on the Vehicle to prevent the Vehicle from starting and/or to locate the Vehicle when permissible law and the terms of this Contract allow us to repossess the Vehicle. You agree that if the Vehicle is disabled, You will need to cure Your default in order to restart the Vehicle. You acknowledge that You have been provided with a toll free telephone number that You may call, no more than once per month, if the Vehicle is disabled but You need an emergency activation which will allow the Vehicle to operate for 24 hours. Refer to the terms and conditions of the Buyer's Disclosure for additional information on the Device.

MICHIGAN CREDIT ACCEPTANCE CORPORATION (06-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

Buyer's Initials _CWC_

Buyer's Initials _____

0027331157-3

## ADDITIONAL TERMS AND CONDITIONS

...ecurity Interest. You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

Late Charge. You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated on page 1 of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

Ownership and Risk of Loss. You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

Your Other Promises to Us. You promise that:
- You will not remove the Vehicle from the United States or Canada.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle in a trade or business without our written consent.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

Prepayment. You have the right to prepay Your account balance early without a penalty. If You prepay in full, You may be entitled to a refund credit of part of the pre-computed finance charge. This credit will be calculated in accordance with the actuarial method. We will apply the credit to the amount You owe Us or if You paid Us more than the amount owed to Us under this Contract, We will refund it to You. A minimum finance charge of $15 may be charged. We will not credit or refund amounts less than $1.00.

If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance, however a prepayment will not excuse any later scheduled payments. You must still make all scheduled payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

...equired Physical Damage Insurance. You agree to have physical damage insurance covering loss or damage to the Vehicle for the term of this Contract. At any time during the term of this Contract, if You do not have physical damage insurance which covers both the interest of You and Us in the Vehicle, then We may buy it for You. If We do not buy physical damage insurance which covers both interests in the Vehicle, We may, if We decide, buy insurance which covers only our interest.

We are under no obligation to buy any insurance, but may do so if We desire. If We buy either of these coverages, We will let You know what type it is and the charge You must pay. The amount You must pay will be the premium for the insurance and a finance charge at the Annual Percentage Rate shown on this Contract. You agree to pay the amount and finance charge in equal installments along with the payments shown on the Payment Schedule.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment.

Optional Insurance, Maintenance or Service Contracts. This Contract may contain charges for optional insurance, maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

Insurance, Maintenance, Service or Other Contract Charges Returned to Us. If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract or used to buy similar insurance which covers only our interest in the Vehicle. Any refund on optional insurance, maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

Default and Acceleration of the Contract. You will be in default if:
- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises You made in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. In figuring what You owe, We will give You a refund of part of the Finance Charge figured the same as if You had prepaid Your obligation under this Contract in full.

Starter Interruption Device and GPS. You understand and agree that if You are in default, We may use any starter interruption device and/or global positioning system (collectively, the Device) installed on the Vehicle to prevent the Vehicle from starting and/or to locate the Vehicle when permissible law and the terms of this Contract allow us to repossess the Vehicle. You agree that if the Vehicle is disabled, You will need to cure Your default in order to restart the Vehicle. You acknowledge that You have been provided with a toll free telephone number that You may call, no more than once per month, if the Vehicle is disabled but You need an emergency activation which will allow the Vehicle to operate for 24 hours. Refer to the terms and conditions of the Buyer's Disclosure for additional information on the Device.

MICHIGAN CREDIT ACCEPTANCE CORPORATION (8-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 3 of 5

↪ Buyer's Initials _____

Buyer's Initials _____

0027331157-5

\* "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under s Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its ....nancing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and/or this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

If a Dispute arises, the complaining party shall give the other party a written Dispute Notice and a reasonable opportunity, not less than 30 days, to resolve the Dispute. Any Dispute Notice to You will be sent in writing to the address on this Contract (or any updated address You subsequently provide to Us). Any Dispute Notice to Us must be sent by mail to: Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Suite 3000, Southfield, Michigan 48034-8339 (or any updated address We subsequently provide to You). Any Dispute Notice You send must give Your Account Number, telephone number and address. Any Dispute Notice must explain the nature of the Dispute and the relief that is demanded. The complaining party must reasonably cooperate in providing any information about the Dispute that the other party reasonably requests.

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. All statutes of limitation that otherwise would apply to an action brought in court will apply in arbitration. The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts) and attorneys' fees and costs.

If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute. In addition, if You or We elect to arbitrate a Dispute, (a) neither You nor We may participate in a class action in court or in a class-wide arbitration, either as a plaintiff, defendant or class member; (b) neither You nor We may act as a private attorney general in court or in arbitration; (c) Disputes brought by or against You may not be joined or consolidated with Disputes brought by or against any other person; and (d) the arbitrator shall have no power or authority to conduct a class-wide arbitration, private attorney general arbitration or joined or consolidated arbitration (this sentence including subparts a through d hereof is referred to in this Arbitration Clause as the "Class Action Waiver"). In the event there is an agreement to arbitrate claims or disputes that conflicts with this Arbitration Clause, whether such agreement is executed before, at the same time, or after this Arbitration Clause, the terms of this Arbitration Clause shall control any and all 'sputes between You and Us.

Notwithstanding the foregoing, We retain the right to repossess the Vehicle upon Your default and to exercise any power of sale under this Contract. If any provision of this Arbitration Clause other than the Class Action Waiver is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the invalid or unenforceable provision shall be inapplicable and deemed omitted, but shall not invalidate the rest of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes subject to this Arbitration Clause. In the event that the Class Action Waiver is determined to be invalid or unenforceable, then, subject to the right to appeal such a ruling, this entire Arbitration Clause (except for this sentence) shall be null and void.

Whoever first elects arbitration may choose to arbitrate under the rules and procedures of either JAMS or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and We agree that this Arbitration Clause governs for that specific conflict. You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of Your choice. The addresses and websites of the organizations are: JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com ; and American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017-4605, www.adr.org. If neither JAMS nor the American Arbitration Association is able or willing to serve, and You and We can't otherwise agree on a substitute administrator or arbitrator, then a court with appropriate jurisdiction shall appoint an arbitrator. We will consider any good faith request You make to Us to pay the administrator's or arbitrator's filing, administrative, hearing and/or other fees if You cannot obtain a waiver of such fees from the administrator and We will not seek or accept reimbursement of any such fees. We will bear the expense of our attorneys, experts and witnesses, except where applicable law and this Contract allow Us to recover attorneys' fees and/or court costs in a collection action We bring. You will bear the expense of Your attorneys, experts and witnesses if We prevail in an arbitration. However, in an arbitration You commence, We will pay Your fees if You prevail or if We must bear such fees in order for this Arbitration Clause to be enforced. Also, We will bear any fees if applicable law requires Us to. The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve the Dispute based on the papers submitted by You or Us and/or through a telephonic hearing. However, any arbitration hearing that You attend will take place at a location that is reasonably convenient to You. Notice of the time, date and location shall be provided to You and Us under the rules and procedures of the arbitration organization selected.

The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. Seq. ("FAA"). However, if the amount of the Dispute exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the Administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the section of this Arbitration Clause that describes who will bear the costs for the initial proceeding before a single arbitrator.

It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state 'bitration law.

MICHIGAN CREDIT ACCEPTANCE CORPORATION (08-12)
© 2012 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 5 of 5

Buyer's Initials _gmc_

Buyer's Initials _____

14-007218-NZ
FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/4/2014 12:18:44 PM
CATHY M. GARRETT

# EXHIBIT B

# THE LIBLANG LAW FIRM, PC

**Attorneys**
Eric J. Liblang
Dani K. Liblang
Michael L. Rowady'
† Also Admitted in California

**Of Counsel**
Susan M. Martin
— ◊ —
**Legal Assistants**
Eileen A. Wheeler
Krista E. Muskovin
Stephanie D. Ahmad

February 13, 2014



## CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Credit Acceptance Corporation
P.O. Box 5070
Southfield, MI 48086-5070

### REJECTION OF ARBITRATION CLAUSE

Re:   Our Client:      Marlen Cordova
      Account No:   77101212
      Lot No:           4Z4
      Dealer:          C & M Auto Sales, Inc., 4605 Livernois, Detroit, MI 48210
      Date of Sale:  1/15/2014

Dear Sir or Madam:

We have been retained by Ms. Cordova with respect to the above referenced transaction. Please be advised that pursuant to the terms of the Retail Installment Contract, Ms. Cordova is rejecting the arbitration clause.

Very truly yours,

Dani K. Liblang

DKL/sda
cc via e-mail: Ms. Marlen Cordova

14-007218-NZ

FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/4/2014 12:18:44 PM
CATHY M. GARRETT

# EXHIBIT C



**Superior Protection Plan**
*Keeping You on the Road*

| 77101212 |
|---|
| **CA Approval #** |

Toll Free Number: 1-866-410-6748
**VEHICLE SERVICE CONTRACT**

**CONTRACT NO.: SP-10000265845**

Purchase of the Service Contract is not required in order to purchase or obtain financing for a motor Vehicle

The words in boldface type (other than the headings in this Contract) are defined in the "Definitions" section.

## CUSTOMER INFORMATION

| Name, Last | Name, First | SELLING DEALER |
|---|---|---|
| CORDOVA | MARLEN | **Name** C & M AUTO SALES, INC. |
| Address | | **Address** 4605 LIVERNOIS |
| City ANN ARBOR | State MI  Zip 48108 | **City** DETROIT  **State** MI  **Zip** 48210 |
| Telephone | | **Telephone** 313-894-2803  **Dealer Account No.** 424 |

## VEHICLE INFORMATION

| Vehicle Identification Number (VIN) 1GKER23788J171153 | Current Odometer Reading 123,764 Miles | New ☐   Used ☒ |
|---|---|---|
| **Year** 2008  **Make** GMC  **Model** Acadia  **Class** 4D Utility | **Contract Price** $ 1,560.00 | **Vehicle / Contract Sale Date** 01/15/2014 |
| **Lien Holder** – Credit Acceptance ( CA ) 25505 West Twelve Mile Road, Southfield, MI 48034 | **Term of Installment Contract** 48 | **Vehicle Purchase Price** $ 14,995.00 |

## CONTRACT INFORMATION

| **Deductible: $100 Per Visit** | If the eligible Vehicle has less than or equal to 100,000 miles on it, High Tech Coverage will apply. If the eligible Vehicle has between 100,001 and 175,000 miles on it, Standard Coverage will apply. If no term information is filled in the term will be 24 months or 24,000 miles, whichever occurs first. |
|---|---|

| **Coverage Type:** | High Tech 0-100,000 Miles Only | Standard 100,001 to 175,000 Miles Only |
|---|---|---|

In order for this Contract to be valid, the following terms must be clear, legible, without correction, and available for use on the Selling Dealer's currently installed rate card.

24 Months   24,000 Miles

Coverage begins on the Vehicle / Contract Sale Date and at the mileage shown on the odometer on that date and expires upon the addition of the number of months or miles specified here, whichever occurs first. Note: This Contract *must* be purchased on the Vehicle Sale Date.

| SURCHARGES / OPTIONS   (check all that apply): | | | Extended Eligibility (Standard Coverage Only) |
|---|---|---|---|
| 4X4 / All Wheel Drive ____   Turbocharger ____   Supercharger ____   One Ton ____ | | | 100,001 – 125,000 Miles (Standard Only) ___X___ |
| Diesel ____   All Wheel Steering ____ | | | 125,001 – 150,000 Miles (Standard Only) _____ |
| I1 Model Years* _____   I2 Model Years* _____   I3 Model Years* _____ | | | 150,001 – 175,000 Miles (Standard Only – 24/24 Max Term) _____ |
| *Based on current calendar year. | | | |

Vehicles with more than 100,000 miles on the odometer on the Vehicle / Contract Sale Date are ineligible for High Tech coverage.

I have read and understand this Contract. I understand the above information is subject to verification and this Contract may be rejected if any of the above information is incorrect or if the above Vehicle is ineligible for the term or coverage written as determined by the Administrator Obligor in its sole discretion.

| *Marlen Cordova* | |
|---|---|
| **CUSTOMER SIGNATURE** | **AUTHORIZED REPRESENTATIVE OF SELLING DEALER** |
| Date: 01/15/2014 | Date: 01/15/2014 |

**ADMINISTRATOR OBLIGOR:** First Automotive Service Corporation, 2400 Louisiana Blvd. NE, Building 4, Albuquerque, NM 87110, 1-866-410-6748.

This is a Contract between You and the Administrator Obligor. The Administrator Obligor's performance under this Contract is insured by an insurance policy issued by Dealers Assurance Company, P. O. Box 21185, Upper Arlington, OH 43221, Telephone: 614-459-0364. If a Covered Repair is not paid within sixty (60) days after proof of loss has been filed, You may file a claim with Dealers Assurance Company at the address listed herein.

0027331163-1



## WHAT TO DO IF YOU HAVE A BREAKDOWN:

- Take immediate action to prevent further damage to Your Vehicle.
- Take Your Vehicle, or if unable to drive, have it towed to the nearest licensed repair facility.
- Before beginning any repair work on Your Vehicle, call 1-866-410-6748.

## YOUR OBLIGATIONS

In order for this Contract to remain in force, You must:

- Change the oil and oil filter in the Vehicle at least every six (6) months or 5,000 miles whichever comes first, or at the intervals specified by the Vehicle Manufacturer, whichever is less.
- Replace the timing belt in the Vehicle at the intervals specified by the Vehicle Manufacturer.
- Perform all other maintenance and servicing of the Vehicle as recommended by the Vehicle Manufacturer.
- Keep, and make available to the Administrator upon request, verifiable signed receipts that show that the above required maintenance and services were timely performed.

In order for a claim payment to be made under this Contract:

- You must have Your repair facility obtain an authorization number from the Administrator before beginning any repair to a Covered Part.
- You must pay the Deductible (if any) for all Covered Repairs performed in a single visit to a repair facility
- You are responsible for authorizing and paying for any teardown or diagnostic time needed to determine if Your Vehicle has a Covered Breakdown. If the Administrator determines that there is a Covered Breakdown, then We will pay for the reasonable cost of the teardown and diagnostic time as part of the Covered Repair.
- You must send all repair documentation requested by the Administrator to the following address:

First Automotive Service Corporation, P O Box 30250, Albuquerque, NM 87190-0250

To make a claim, call the Administrator toll-free at 1-866-410-6748. Claims Department hours are Monday through Friday, 7 a.m. to 7 p.m., Saturday 8 a.m. to 2 p.m., Central Time. CLAIMS MUST BE SUBMITTED WITHIN SIXTY (60) DAYS FROM AUTHORIZATION TO QUALIFY FOR REIMBURSEMENT.

EMERGENCY REPAIRS: If emergency repairs covered by this Contract are required outside the Selling Dealer's or Administrator's business hours, You should deliver Your Vehicle to a licensed repair facility and have the necessary repairs performed at a reasonable and customary charge. On the next business day, You should report the repairs to the Administrator. To report an emergency repair and obtain a reimbursement, please call the claims number below for instructions. Emergency repairs are only those repairs, which, if not performed, would render Your Vehicle inoperable or unsafe to drive and impair its future operation.

## OUR OBLIGATIONS

1. **Covered Breakdowns (Deductible Applies).** If a Covered Part experiences a Breakdown during the term of this Contract, We will pay You or the repair facility, less the Deductible (if any), up to the Limits of Liability, for the repair or replacement, as the Administrator deems appropriate, of the Covered Part(s) that caused the Breakdown, but only if:

- You have met Your obligations as described in this Contract, and
- The Breakdown is not one of the excluded Breakdowns listed under the heading "EXCLUSIONS—WHAT THIS CONTRACT DOES NOT COVER" below.

This Contract refers to a Breakdown that is covered as a "Covered Breakdown." Replacement parts can be of like kind and quality. They may include new, re-manufactured or used parts as determined by the Administrator. The use of non-original manufacturer's parts is permitted. Administrator reserves the right to inspect any Vehicle prior to authorization of a claim.

2. **Additional Benefits (No Deductible)**

- Rental Car. We will reimburse You for a rental car at a rate of up to $30.00 for every eight (8) hours of labor time required to complete a Covered Repair, up to a maximum of $150.00 per Covered Breakdown. If there is a verifiable delay in obtaining a part needed to complete a Covered Repair, We will reimburse You for a rental car for up to an additional two (2) days. Labor time required is determined from the national repair manual in use by the repair facility. You must provide the Administrator with a valid receipt from a licensed rental agency to obtain reimbursement for a rental car.
- Towing. We will reimburse You for towing if the Vehicle is disabled due to a Covered Breakdown, up to a maximum of $50 per Covered Breakdown. You must provide the Administrator with a valid receipt to obtain reimbursement for towing.

## COVERED PARTS

Subject to the terms and conditions of this Contract, We will pay, or reimburse You, for the reasonable costs to repair or replace any or all of the following listed Covered Parts (for the coverage specified below that You have purchased) that fail as the result of a Covered Breakdown, subject to the exclusions listed in the "EXCLUSIONS—WHAT THIS CONTRACT DOES NOT COVER" section below. For convenience, the Covered Parts are listed next to the Vehicle systems to which they relate. The Vehicle systems listed are not Covered Parts.

## STANDARD COVERAGE

1. Engine – Engine Block and Cylinder Heads are covered when damaged due to a failure of an internally Lubricated Part. All internal Lubricated Parts, harmonic balancer, turbocharger, supercharger, timing gear, chain and bolt, head gasket, timing cover, timing belt, intake and exhaust manifolds, valve covers, oil pan and engine mounts.
2. Transmission – Transmission case and all internal Lubricated Parts, torque converter, transmission mounts, flex plate, and vacuum modulator.
3. Drive Axle(s) – Drive axle housing and all internal Lubricated Parts, drive shafts, universal joints, and constant velocity joint unless failure was caused by neglected, torn, cracked or perforated constant velocity joint boot. See exclusion for constant velocity joint boots.
4. Transfer Case – Transfer case and all internal Lubricated Parts.
5. Steering – Steering gear box, or rack, and all internal Lubricated Parts, power steering pump, steering column shaft, and steering column shaft couplings, pitman arm, idler arm, tie rod end(s), and drag link.
6. Electrical – Alternator, voltage regulator, starter motor & drive, and starter solenoid, ignition module and windshield wiper motor(s).
7. Air Conditioner – Condenser, compressor, compressor clutch & pulley, idler pulley & idler pulley bearing, evaporator, receiver dryer and orifice tube, and blower motor (only if the air conditioner is factory or dealer installed equipment)
8. Suspension – Radius arm, control arms, control arm shafts, bearings and bushings, king pin and king pin bushings, strut bar and bushings, stabilizer bar, stabilizer link, stabilizer bushing, spindle, wheel bearings, and torsion bars.
9. Cooling – Water pump, engine cooling fan motor, radiator, rad stor fan, and fan clutch
10. Fuel – Fuel delivery pump, fuel injectors, and fuel tank.
11. Brake – Standard and ABS brake system master cylinder, ABS accumulator, ABS control module, ABS pump, ABS motor, ABS reservoir and ABS wheel speed sensors, power brake cylinder, vacuum assist booster, compensating valve, disc brake caliper(s), wheel cylinder(s), hydraulic lines and hydraulic line fittings.

## High Tech Coverage        (Included on all Vehicles with 0 – 100,000 Miles Only)

12. High Tech Includes components listed under Standard Coverage above plus: Power seat motor, power antenna motor, power window motor(s), power door lock actuator, fuel pressure regulator, sunroof motor, convertible top motor, driver information gauge indicators relating to the operation of the Vehicle (burned out lights/lamps are not covered), body control module, control dash power supply, cruise control module and servo/transducer, fuel sending unit, fuel gauge, metal fuel delivery lines, idle speed motor, manifold pressure sensor, manifold temperature sensor, throttle position sensor, mass air flow sensor, oxygen sensor, coolant temperature sensor, vehicle speed sensor, camshaft position sensor, crankshaft angle sensor, E.C.M., primary fuel injection computer, and temperature control programmer.
13. Seals and Gaskets – Leaking seals and gaskets on any Covered Part listed above, provided that the Vehicle has 100,000 miles or less on the Vehicle Sale Date. Minor loss of fluid or seepage is considered normal and not considered a Covered Breakdown

Note: Fluids are covered when replaced as part of the repair or replacement of a Covered Part



P.2

FORM AWA-XX-XX-05                                                                                                                REV 02.15.12

## CLUSIONS — WHAT THIS CONTRACT DOES NOT COVER

- This Contract provides no benefits or coverage and We have no obligation under this Contract for:
  1. A Breakdown caused by lack of customary, proper or Vehicle Manufacturer's specified maintenance.
  2. A Breakdown caused by contamination of or lack of proper fuels, fluids, coolants or lubricants, including a Breakdown caused by a failure to replace seals or gaskets in a timely manner.
  3. A Breakdown caused by towing a trailer, another vehicle or any other object unless Your Vehicle is equipped for this use as recommended by the Vehicle Manufacturer.
  4. Repair of any parts in connection with a Covered Repair when those parts are not necessary for the completion of the Covered Repair or were not damaged by the failure of a Covered Part. Such repair or replacement is an improvement to Your Vehicle and is not covered by this Contract.
  5. Pre-existing damage, or a Breakdown that occurred before Your purchase of this Contract, either of which would have been obvious and apparent if that component was inspected at time of purchase.
  6. A Breakdown caused by or involving modifications or additions to Your Vehicle unless those modifications or additions were performed or recommended by the Vehicle Manufacturer.
  7. A Breakdown caused by off-roading, misuse, abuse, racing or any form of competition.
  8. Any cost covered by a repair facility's or part supplier's guarantee, or any cost which would normally be covered by a Vehicle Manufacturer's warranty or a dealer warranty required under state law, whether or not such warranty is in force respecting Your Vehicle.
  9. Costs of other damage caused by the failure of a part listed in this Contract as an excluded part.
  10. Damage to the Vehicle caused by continued Vehicle operation after the Breakdown of a Covered Part.
  11. Any liability, cost or damages You incur or may incur to any third parties, other than for Covered Parts.
  12. A Breakdown caused by rust or corrosion.
  13. A Breakdown caused by collision, fire, electrical fire or meltdown, theft, freezing, vandalism, riot, explosion, lightning, earthquake, windstorm, hail, water, flood or acts of public enemy or any government authority, or for any hazard insurable under standard physical damage insurance policies whether or not such insurance is in force respecting Your Vehicle.
  14. A Breakdown outside the continental United States or Canada.
  15. Loss of use, loss of time, lost profits or savings, inconvenience, commercial loss, or other incidental or consequential damage or loss that results from a Breakdown.
  16. Liability for damage to property, or for injury to, or death of, any person arising out of the operation, maintenance or use of Your Vehicle whether or not related to a Breakdown.
  17. Any cost or other benefit for which the Vehicle Manufacturer has announced its responsibility through any means including public recalls or factory service bulletins.
  18. Any part not covered, or excluded, by the original Vehicle Manufacturer's warranty.
  19. Loss of compression through gradual failure of rings and valves.
  20. Constant velocity joint boots.
  21. A gradual reduction in performance capability due to day-to-day routine operation.
  22. The maintenance services and parts described in paragraph 1 under "Your Obligations" or in the Vehicle Manufacturer's maintenance schedule for Your Vehicle.
  23. Other normal maintenance services and parts, including, without limitation, engine tune-up, spark plugs, ignition wires, distributor cap and rotor, carburetor, EGR valve, batteries, filters, lubricants or fluids, air conditioning refrigerant or engine coolant (except when such lubricants, fluids, refrigerant or coolant must be replaced as part of the repair or replacement of a Covered Part), all hoses and belts that are not specifically listed under "Covered Parts," wiper blades, brake pads and shoes, brake rotors and drums, suspension alignment, tires, wheel balancing, shock absorbers, exhaust system, friction clutch disc and pressure plate, and clutch throw out bearing.
  24. Glass, glass framework and fastening adhesives, sealed beam head lamps, light bulbs, lenses, HID assemblies, Safety restraint systems (including air bags), trim, moldings, bright metal, upholstery and carpeting, paint, sheet metal, body panels, structural framework and structural welds.
  25. After market accessories or non-original equipment, components and systems not installed by the Vehicle Manufacturer, including, without limitation, anti-theft systems, radio/speaker equipment, telephones, cruise control and sunroof.
  26. GPS navigation systems and TV/Video/DVD/Entertainment Systems.
  27. Damage to a Covered Part caused by a part that is not a Covered Part.
  28. Repairs performed without Our prior authorization.
  29. To any parts or systems that are considered alternative fuel or electric/hybrid vehicle related.

B. In addition, this Contract provides no benefits or coverage and We have no obligation under this Contract if:
  1. The Vehicle odometer fails, or for any reason does not record the actual mileage of Your Vehicle after purchase date and You do not have it repaired and the mileage certified within thirty (30) days of failure date.
  2. Your Vehicle is used for business, deliveries, construction or commercial hauling, or as a postal vehicle, taxi, police car or other emergency vehicle.
  3. You rent Your Vehicle to someone else.
  4. Your Vehicle is equipped with a snow plow or used to plow snow.
  5. You are using or have used Your Vehicle in a manner that is not recommended by the Vehicle Manufacturer.
  6. Your Vehicle is modified from the Vehicle Manufacturer's original specifications.

## CANCELLATION OF THIS CONTRACT

**By You**
If the Contract Price was financed, You may cancel this Contract by contacting the Administrator. If the Contract Price was not financed, You may cancel the Contract by contacting the Selling Dealer.

**By Us**
We reserve the right to cancel this Contract and will not pay for a Covered Breakdown if:
- The Vehicle odometer fails or for any reason does not record the actual mileage of Your Vehicle after purchase date, and You do not have it repaired and the mileage certified within thirty (30) days of failure date.
- Your Vehicle is used for business, deliveries, construction or commercial hauling, or as a postal vehicle, taxi, police car or other emergency vehicle.
- You rent Your Vehicle to someone else.
- Your Vehicle is equipped with a snow plow or used to plow snow.
- You are using or have used Your Vehicle in a manner that is not recommended by the Vehicle Manufacturer.
- Your Vehicle is modified from the Vehicle Manufacturer's original specifications.

**By the Lien Holder**
You understand and acknowledge that the Lien Holder (if any) has the right to cancel this Contract if the Vehicle is repossessed or destroyed or You are otherwise in default of Your obligations to repay the amount financed by the Lien Holder.

**Refunds and Charges**
If the Contract price was financed, You will be entitled to a full refund of the Contract Price, less a $50 cancellation fee, if You provide a written notice of cancellation to the Administrator within the first thirty (30) days after the Contract Sale Date, and if You have not filed a claim under this Contract. If the Contract Price was not financed You will be entitled to a full refund of the Contract Price, less a $50 cancellation fee, if You provide a written notice of cancellation to the Selling Dealer within the first thirty (30) days after the Contract Sale Date, and if You have not filed a claim under this Contract. If You provide a written notice of cancellation to the Administrator after the first thirty (30) days after the Contract Sale Date, or if We or the Lien Holder cancels this Contract at any time, You will be entitled to a prorated refund of the Contract Price (less a $50.00 cancellation fee) based on the greater of the number of days the Contract was in force or the miles driven compared to the total term of coverage (in months) specified on the first page of this Contract under "Coverage Term." Your cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the Vehicle. The term of this Contract for cancellation purposes will be based on the date You purchased Your Contract and the Vehicle mileage on the date purchased. If the Contract Price was financed, any and all refunds will be paid to the Lien Holder, any and all refunds will be paid to Your by the Selling Dealer in the case that the Contract was not financed.

## DEFINITIONS

- "Administrator Obligor" and "Administrator" means First Automotive Service Corporation.
- "Breakdown" means the total failure of any Covered Part to work as it was designed to work in normal service
- "Contract" means this Contract. "Contract Price" means the price of this Contract as specified on the first page of this Contract
- "Covered Breakdown" means a Breakdown that is covered by this Contract.
- "Covered Part" means an item listed as a Covered Part in the "Covered Parts" section.
- "Covered Repair" means a repair to a Covered Part approved by the Administrator.
- "Deductible" means the deductible, if any, shown on the first page of this Contract
- "Installment Contract" means the agreement You sign with the Selling Dealer whereby You agree to buy the Vehicle identified on the first page of this Contract.
- "Lien Holder" means the entity (if any) to whom the Selling Dealer assigned the Installment Contract as identified on the first page of the Contract.
- "Limits of Liability" has the meaning given to such term in the "Other Important Contract Provisions/Limitations — Limits of Our Liability" section on this page.
- "Lubricated Part" means a part that requires lubrication to perform its function.
- "Selling Dealer" means the automobile dealer identified on the first page of this Contract.
- "Term of Installment Contract" means the period of time during which You will pay for the Vehicle.
- "Vehicle" means the Vehicle covered by this Contract, as identified on the first page of this Contract.
- "Vehicle Manufacturer" means the manufacturer of the Vehicle.
- "Vehicle / Contract Sale Date" means the date the Vehicle and this Contract were purchased.
- "Vehicle Purchase Price" means the price paid for the Vehicle excluding dealer prep, tax and additional products.
- "We," "Us" and "Our" refers to the Administrator /Obligor shown on the first page of this Contract
- "You," "Your," "Yours" and "I" refer to the customer identified on the first page of this Contract.

## OTHER IMPORTANT CONTRACT PROVISIONS/LIMITATIONS

### Limits of Our Liability
THIS CONTRACT IS NOT AN INSURANCE POLICY. IT IS A SERVICE CONTRACT BETWEEN YOU AND THE ADMINISTRATOR.
The total benefits payable for a single Covered Repair or repair visit shall not exceed the Actual Cash Value of the covered Vehicle immediately preceding the Covered Breakdown. The aggregate of all benefits payable shall not exceed the purchase price of the covered Vehicle, excluding any and all fees or other optional products and or services. The Actual Cash Value (ACV) is determined by the Average Trade-in value as indicated in the most current NADA Used Vehicle pricing guide.

### Our Rights Against Others
If You receive any benefits under this Contract, We will be entitled to all Your rights of recovery against any manufacturer, repairer or other party who may be responsible to You for the costs covered by this Contract or for any other payment made by Us. If We ask, You agree to help Us enforce these rights. You also agree to cooperate and help Us in any other matter concerning this Contract.

### Entire Agreement
This Contract contains the entire agreement between You and Us and supersedes any and all prior and contemporaneous agreements (both written and verbal) between You and Us concerning the subject matter of this Contract. This Contract is not valid unless signed by both You and an authorized representative of the Selling Dealer.

### When this Contract will End
- This Contract will terminate when:
- Your Vehicle reaches the time or mileage limitation specified on the first page of this Contract
- You sell Your Vehicle unless this Contract is properly transferred as provided in the section of this Contract entitled "HOW COVERAGE MAY BE TRANSFERRED"
- This Contract is cancelled as outlined in the "CANCELLATION OF THIS CONTRACT" section.



## HOW COVERAGE MAY BE TRANSFERRED

- If You sell Your Vehicle, You may transfer this Contract to the transferee, but only if:
- You are the first holder of this Contract
- Your Vehicle is sold to a private party
- The Administrator receives from You the completed transfer application (see below) within thirty (30) days after the date You sell Your Vehicle
- You pay the Administrator a $50.00 transfer fee
- You provide the transferee and Administrator with copies of all Vehicle maintenance and service receipts as required by this Contract (see "YOUR OBLIGATIONS").

The transfer will be effective when You receive a transfer confirmation letter from the Administrator. If the purchase of Your Vehicle was financed and Your Vehicle is a total loss or is repossessed, Your rights and obligations under this Contract immediately and automatically transfer to the Lien Holder.

## TRANSFER APPLICATION
To transfer this Contract, complete the form on the bottom of this page and mail it with copies of Your maintenance records and Your copy of this Contract to the Administrator at the following address:

First Automotive Service Corporation, P O Box 30250, Albuquerque, NM 87190-0250
Note: The Administrator may reject any application for transfer at their discretion.

**Administrator Obligor:**

I, _____ (transferor), am transferring this Contract in accordance with the provisions stated in this Contract. I am enclosing a $50.00 check or money order payable to First Automotive Service Corp. I have provided to the new transferee, and Administrator Obligor, copies of all receipts for the maintenance and servicing of the Vehicle as required by this Contract.

Name of Transferee _____  Contract # _____  VIN # _____

Address _____  City _____  State _____  Zip _____

Date of Transfer _____  Odometer Mileage on Date of Transfer _____

Signature of Transferee _____  Date _____

Signature of Transferor _____  Date _____

## STATE LAW DISCLOSURES
(Revised 03/01/09)
FASC-CUE02-4

Some of the states in which We are selling Vehicle Service Contracts require that We make certain additional disclosures to You or require that some of the terms and conditions of this Contract be different from the standard terms and conditions specified above. These additional disclosures and different terms and conditions are set forth below. They apply to You if You purchased this Contract in one of the states specified below.

### ALABAMA
The paragraph under "Cancellation of this Contract—Refunds and Charges" is replaced in its entirety with the following: "You will be entitled to a full refund of the Contract price if You provide a written notice of cancellation to the Selling Dealer within the first thirty (30) days after the Contract purchase date, and if You have not filed a claim under this Contract. If You provide a written notice of cancellation to the Selling Dealer after the first thirty (30) days after the Contract purchase date, or if We or the Lien Holder cancels this Contract at any time. You will be entitled to a prorated refund of the Contract price (less a cancellation fee up to $25.00) based on the greater of the number of days the Contract was in force or the miles driven compared to the total time or Vehicle mileage specified on the first page of the Contract under 'Coverage Term.' Your cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the Vehicle. The term of this Contract for cancellation purposes will be based on the date You purchased Your Contract and the Vehicle mileage on the date purchased. If the Contract price was financed, any and all refunds will be paid to the Lien Holder. A ten percent (10%) penalty per month will be added to any refund that is not paid or credited within forty-five (45) days after the Selling Dealer receives Your request for cancellation. If the Contract price was not financed, any and all refunds will be paid to You by the Selling Dealer."

### ARIZONA
The following paragraph is deleted in its entirety from the first page "I have read and understand this Contract. I understand the above information is subject to verification and this Contract may be rejected if any of the above information is incorrect or if the above Vehicle is ineligible for the term or coverage written as determined by the Administrator Obligor in its sole discretion".

Under "Exclusions – What this Contract does not Cover": Item A.5 is deleted. Items A.23 through A.26 are amended as follows:
A.23. Other normal maintenance services and parts, including, without limitation, ENGINE TUNE-UP, SPARK PLUGS, IGNITION WIRES, DISTRIBUTOR CAP AND ROTOR, CARBURETOR, EGR VALVE, BATTERIES, FILTERS, LUBRICANTS OR FLUIDS, AIR CONDITIONING REFRIGERANT OR ENGINE COOLANT (except when such lubricants, fluids, refrigerant or coolant must be replaced as part of the repair or replacement of a Covered Part), ALL HOSES AND BELTS THAT ARE NOT SPECIFICALLY LISTED UNDER "COVERED PARTS," WIPER BLADES, BRAKE PADS AND SHOES, BRAKE ROTORS AND DRUMS, SUSPENSION ALIGNMENT, TIRES, WHEEL BALANCING, SHOCK ABSORBERS, EXHAUST SYSTEM, FRICTION CLUTCH DISC AND PRESSURE PLATE, AND CLUTCH THROW OUT BEARING.
A.24. GLASS, GLASS FRAMEWORK AND FASTENING ADHESIVES, SEALED BEAM HEAD LAMPS, LIGHT BULBS, LENSES, HID ASSEMBLIES, SAFETY RESTRAINT SYSTEMS (INCLUDING AIR BAGS), TRIM, MOLDINGS, BRIGHT METAL, UPHOLSTERY AND CARPETING, PAINT, SHEET METAL, BODY PANELS, STRUCTURAL FRAMEWORK AND STRUCTURAL WELDS.
A.25. After market accessories or non-original equipment, components and systems not installed by the Vehicle Manufacturer, including, without limitation, ANTI-THEFT SYSTEMS, RADIO/SPEAKER EQUIPMENT, TELEPHONES, CRUISE CONTROL AND SUNROOF.
A.26. GPS NAVIGATION SYSTEMS AND TV/VIDEO/DVD/ENTERTAINMENT SYSTEMS.

### ARKANSAS
1. The following sentence is added at the top of the first page of this Contract: "Purchase of this Contract is not required in order to purchase or obtain financing for a motor vehicle."
2. The paragraph at the bottom of the first page of this Contract is replaced with the following paragraph: "THIS SERVICE CONTRACT IS INSURED FOR ITS LIABILITY UNDER A SERVICE CONTRACT REIMBURSEMENT INSURANCE POLICY ISSUED BY DEALERS ASSURANCE COMPANY. IF WE DO NOT SETTLE YOUR CLAIM(S), AS ADMINISTRATOR WITHIN SIXTY (60) DAYS OF OUR RECEIPT OF YOUR PROOF OF LOSS, YOU MAY MAKE A CLAIM DIRECTLY AGAINST: Dealers Assurance Company, PO Box 21185, Upper Arlington, OH 43221 The toll free number is 1-614-459-0367.

### CONNECTICUT
Arbitration and Resolution of Disputes for Connecticut Residents: If there is a dispute regarding the terms of this Service Contract or the coverage of any claim filed with Us, We will make a reasonable effort to resolve the dispute with You. If We are unable to resolve the dispute, You may file a formal written complaint with the Consumer Affairs Division of the Connecticut Insurance Department. The complaint must contain a short and plain description of the dispute, including the efforts made to resolve the dispute and the results of those efforts, the purchase price or lease price of Your Covered Vehicle, the cost of any disputed repairs, and a copy of this Service Contract document. The complaint should be mailed to State of Connecticut, Insurance Department, P.O. Box 816, Hartford, CT 06142-0816, Attention: Consumer Affairs.

Your complaint will be reviewed by an examiner, who will attempt to mediate the dispute. If the mediation efforts are unsuccessful, Your complaint will be referred to the Arbitration Unit of the Connecticut Insurance Department for further resolution through arbitration. Unless either party objects to binding arbitration of the dispute by filing a written objection with the examiner within ten (10) days after notice that the matter has been referred to arbitration, the decision of the arbitrator will be binding on both parties. A more detailed description of the arbitration procedure is set forth in Sections 42-260-1 through 42-260-5 of the Connecticut Administrative Code.

You have a right to cancel this Service Contract if You return the Vehicle: the Vehicle is sold, lost, stolen or destroyed. If this Service Contract is for less than one year of coverage, this Contract will be extended while Your Vehicle is being repaired. This Service Contract does not include in-home service. The costs of transporting the Vehicle will not be paid for by the Administrator.

### GEORGIA
1. Unless otherwise specified on the first page of this Contract, You paid for this Contract in cash. If You financed the Contract price, the terms of the financing are contained in the Service Contract entered into between You and the Selling Dealer.
2. The section entitled "Cancellation of this Contract — Refunds and Charges" is replaced in its entirety with the following: "You will be entitled to a full refund of the Contract price if You provide a written notice of cancellation to the Selling Dealer within the first thirty (30) days after the Contract purchase date. If You provide a written notice of cancellation to the Selling Dealer after the first thirty (30) days after the Contract purchase date. You will be entitled to a prorated refund of the Contract Price based on the greater of the number of days the Contract was in force or the miles driven compared to the total time or Vehicle mileage specified on the first page of this Contract under 'Coverage Term.' Your cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the Vehicle. The term of this Contract for cancellation purposes will be based on the date You purchased Your Vehicle and the Vehicle mileage on the date purchased. If the Contract Price was financed, any and all refunds will be paid to the Lien Holder. If the Contract Price was not financed, any and all refunds will be paid to You by the Selling Dealer."
3. The section entitled "Cancellation of this Contract — By Us" is replaced with the following: "We reserve the right to cancel this Contract and will not pay for a Covered Breakdown if (i) We discover fraud or material misrepresentation in connection with Your obtaining this Contract or a claim made under this Contract, or (ii) the Lien Holder advises Us that You have defaulted in Your obligation to repay the amount financed by the Lien Holder. In general, if We cancel this Contract, We will mail to You written notice of cancellation at least thirty (30) days before the cancellation date. However, if We cancel this Contract for any reason other than non-payment, You will receive written notice of cancellation at least thirty (30) days before the cancellation date and Your refund of the unearned consideration will be 100% pro-rata with no cancellation/administrative fee or claims paid deducted from any refund. However, if We cancel this Contract because You have defaulted in Your obligation to repay the amount financed by the Lien Holder, We will mail to You written notice of cancellation at least ten (10) days before the cancellation date."
4. No cancellation/administrative fee or claims paid will be deducted from any cancellation.
5. Misrepresentation of the odometer reading at the time of effective coverage may result in denial of coverage under this Service Contract.
6. Exclusion A.6 is amended to read: "A Breakdown caused by (a) involving modifications or additions to Your Vehicle made by You or with Your knowledge, and those modifications or additions were performed or recommended by the Vehicle Manufacturer."
7. Exclusion B.6 is amended to read: "Your Vehicle is modified by You or with Your knowledge from the Vehicle Manufacturer's original specifications.
8. At the sole discretion of the Administrator, a replacement of any part may be made with new parts, remanufactured parts or used parts of like kind and quality at the time of the breakdown.

FORM AWA XX-XX-05                                    P.6                                    REV 02.15.13

32

ne following sentence is added at the top of the first page of this Contract: "Purchase of this Contract is not required either to purchase or to obtain financing for a motor vehicle."
The paragraph at the bottom of the first page of this Contract is replaced with the following paragraph: "THIS SERVICE CONTRACT IS INSURED FOR ITS LIABILITY UNDER A SERVICE CONTRACT REIMBURSEMENT INSURANCE POLICY ISSUED BY DEALERS ASSURANCE COMPANY.  IF WE DO NOT SETTLE YOUR CLAIM(S), AS ADMINISTRATOR WITHIN SIXTY (60) DAYS OF OUR RECEIPT OF YOUR PROOF OF LOSS, YOU MAY MAKE A CLAIM DIRECTLY AGAINST: Dealers Assurance Company, PO Box 21185, Upper Arlington, OH 43221. The toll free number is 1-800-282-8913.

3  Coverage afforded under this Contract is not guaranteed by the Idaho Insurance Guarantee Association.

4. The following language is added at the end of paragraph 2 under "Your Obligations:"
   "If a Covered Part has a Covered Breakdown at any time outside of Claims Department regular business hours, You may take one of the following steps: (1) Wait until regular business hours and then follow the normal claims procedure outlined above, or (2) Authorize and pay for any teardown or diagnostic time needed to determine whether Your Vehicle has a Covered Breakdown. If You reasonably determine that You have a Covered Breakdown and You choose to have Your Vehicle repaired, You are responsible for paying for the repair. You must then call the Administrator during the next available regular business hours so that the Administrator may determine whether there was a Covered Breakdown. If the Administrator determines that there was a Covered Breakdown, then We will pay You in accordance with the terms and conditions of this Contract."

**ILLINOIS**
1. The Administrator Obligor is First Automotive Service Corporation, a New Mexico Corporation, located at 2400 Louisiana Blvd. NE, Albuquerque, NM 87110, 1-800-634-4333.
2. The section entitled "Cancellation of this Contract — By You" is replaced with the following: "You may cancel this Contract by contacting Us through the Selling Dealer."
3. The section entitled "Cancellation of this Contract — Refunds and Charges" is replaced with its entirety with the following: "You will be entitled to a full refund of the Contract Price if You provide a written notice of cancellation to the Selling Dealer within the first thirty (30) days after the Contract purchase date, and if You have not filed a claim under this Contract. If You provide a written notice of cancellation to the Selling Dealer after the first thirty (30) days of the Contract purchase date, or if We or the Lien Holder cancels this Contract at any time, You will be entitled to a prorated refund of the Contract price based on the greater of the number of days the Contract was in force or the miles driven compared to the total time or Vehicle mileage specified on the first page of this Contract under 'Coverage Term,' less a cancellation fee equal to the lesser of $50.00 or ten percent (10%) of the amount of the prorated refund." Your cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the Vehicle.
4. Under "Exclusions — What this Contract does not Cover," Item A.21 is replaced with the following: "21. A gradual reduction in operating performance due to normal wear and tear."

**IOWA**
1. Unless otherwise specified on the first page of this Contract, You paid for this Contract in cash. If You financed the Contract price, the terms of the financing are contained in the Service Contract entered into between You and the Selling Dealer.
2. For Iowa Residents only: If You have problems or questions about this Contract, You may contact the Commissioner of Insurance of the State of Iowa or the Iowa Securities Bureau at (515) 281-4441. The address is: Iowa Securities Bureau, 340 East Maple Street, Des Moines, Iowa 50319-0066.
3. The "Cancellation of this Contract — Refunds and Charges" section of this Contract is amended as follows: If this Contract is originally delivered to You by mail, You may cancel this Contract within 20 days after the date the Contract was mailed to You and receive a full refund of the Contract price provided no claim has been made under this Contract. If this Contract was delivered to You at the time of sale, You may cancel this Contract within 10 days after the date of the Contract and receive a full refund of the Contract price provided no claim has been made under the Contract. If a full refund is due to You under this Contract, a 10% penalty per month will be added to the refund if it is not made within 30 days of return of the Contract to Us.
4. The third paragraph under "Our Obligations—Covered Breakdowns (Deductible Applies)" is replaced in the following: "Replacement parts can be of like kind and quality and may include new, remanufactured or used parts as determined by the Administrator, except that (i) used parts may only be used with Your prior written authorization to do so, and (ii) rebuilt parts may only be used if the parts are rebuilt according to national standards recognized by the insurance division (Commissioner of Insurance of the State of Iowa/Iowa Securities Bureau)."

**MASSACHUSETTS**
NOTICE TO CUSTOMER: PURCHASE OF THIS CONTRACT IS NOT REQUIRED IN ORDER TO REGISTER OR FINANCE A VEHICLE. THE BENEFITS PROVIDED MAY DUPLICATE EXPRESS MANUFACTURER'S OR SELLER'S WARRANTIES THAT COME AUTOMATICALLY WITH EVERY SALE. THE SELLER OF THIS COVERAGE IS REQUIRED TO INFORM YOU OF ANY WARRANTIES AVAILABLE TO YOU WITHOUT THIS CONTRACT.
Chapter 90, Section 7N1M of Massachusetts General Laws requires an automobile dealer to provide a warranty covering certain classes of used motor vehicles as follows:
• Used vehicles with less than 40,000 miles at the time of sale are covered for 90 days or 3,750 miles, whichever comes first.
• Used vehicles with 40,000 miles or more, but less than 80,000 miles, at the time of sale are covered for 60 days or 2,500 miles, whichever comes first.
• Used vehicles with 40,000 miles or more, but less than 125,000 miles, at the time of sale are covered for 30 days or 1,250 miles, whichever comes first.
The Vehicle You have purchased may be covered by this law. If so, the following is added to this Contract: In addition to the dealer warranty required by this law, You have elected to purchase this Contract, which may provide You with additional protection during the dealer warranty period and provides protection after the dealer warranty has expired. You have been charged separately only for this Contract. The required dealer warranty is provided free of charge. Furthermore, the definition, coverage, and exclusions stated in this Contract apply only to this Contract and are not the terms of the required dealer warranty.

**MINNESOTA**
1. Paragraph 1 under "Your Obligations" is replaced with the following: "In order for this Contract to remain in force, You must:
   •   Change the oil and oil filter in the Vehicle at least every six (6) months or 5,000 miles, whichever comes first;
   •   Replace the timing belt in the Vehicle at least every 90,000 miles,
   •   keep and make available to the Administrator upon request, verifiable signed receipts that show that the above required maintenance and servicing was timely performed."
2. Under "Exclusions — What this Contract does not Cover:"
   a.   Item A.1 is replaced with the following: "1. A Breakdown caused by lack of customary or proper maintenance."
   b.   Item A.5 is replaced with the following: "5. Fraud, material misrepresentation or material omission made by You in pursuing a claim under this Contract."
   c.   Item A.12, A.22 and A.27 are deleted in their entirety.
   d.   Item A.17 is replaced with the following: "17. Any cost or other benefit that the Vehicle manufacturer will pay as a result of a public recall or factory service bulletin.
   e.   Item B.5 is deleted.
3. There is no exclusion for pre-existing conditions, normal wear and tear or repairs caused to a covered part by a non-covered part or by "consequential" damage from a non-covered part.  Exclusion of coverage for odometer tampering in any form applies only if it occurs and You fail to repair while the Vehicle is owned by You. There is no exclusion for repairs or replacements of motor Vehicle components which were not operating properly in accordance with manufacturer's specifications at the time of sale of this Service Contract or if the manufacturer has "branded" the title (cancelled the factory warranty).
4. As required by Section 325F. 662 of the Minnesota Statutes, the Selling Dealer is providing to You the coverage listed below at no charge if the Vehicle has less than 75,000 miles at the time You purchased the Vehicle or if the purchase price of the Vehicle is $3,000 or more (including the trade-in value of any Vehicle traded in by You, but excluding tax, license fees, registration fees, and finance charges) or if the Vehicle does not fall within any of the other exclusions listed under Subdivision 3 of Section 325F.662 of the Minnesota Statutes
   The term of such coverage is based upon the mileage of the Vehicle at the time of purchase and is as follows:
   a.   Used Vehicles with less than 36,000 miles are covered for 60 days or 2,500 miles, whichever comes first.
   b.   Used Vehicles with 36,000 miles or more, but less than 75,000 miles, are covered for 30 days or 1,000 miles, whichever comes first.
The following parts are covered by the Selling Dealer's limited warranty:
   1   Engine. All lubricated parts, intake manifolds, engine block, cylinder head, rotary engine housings.
   2   Transmission: Automatic transmission case, internal parts, and the torque converter, or the manual transmission case and the internal parts;
   3   Drive Axle: Axle housings and internal parts, axle shafts, drive shafts, output shafts, and universal joints, but secondary drive axle on vehicles other than passenger vans is excluded for coverage;
   4   Brakes: Master cylinder, vacuum assist booster, wheel cylinders, hydraulic lines and fittings, and disc brakes calipers.
   5   Steering: Steering gear housing and all internal parts, power steering pump, valve body, and piston.
   6   Water pump.

FORM AWA-XX-XX-05                                                              P.6                                                              REV 02.15.12

Externally-mounted mechanical fuel pump.

In addition, the following parts are covered if the Vehicle has less than 36,000 miles. Steering rack, radiator, alternator, generator, and starter. The above coverage is excluded from this Contract during the applicable warranty period unless the Selling Dealer is unable to meet its obligations. Your rights and obligations regarding this coverage are more fully explained in the used Vehicle Service Contract document provided to You by the Selling Dealer.

## MISSISSIPPI

1. Unless otherwise specified on the first page of this Contract. You paid for this Contract in cash. If You financed the Contract Price, the terms of financing are contained in the Service Contract entered into between You and the Selling Dealer.

2. The following language is added at the end of paragraph 2 under "Your Obligations": "If a Covered Part has a Covered Breakdown at any time outside of Claims Department regular business hours, You may take one of the following steps.
   * Wait until regular business hours and then follow the normal claims procedure outlined above; or
   * Authorize and pay for any teardown or diagnostic time needed to determine whether Your Vehicle has a Covered Breakdown. If You reasonably determine that You have a Covered Breakdown and You choose to have Your Vehicle repaired, You are responsible for paying for the repair. You must then call the Administrator during the next available regular business hours so that the Administrator may determine whether there was a Covered Breakdown. If the Administrator determines that there was a Covered Breakdown, then We will pay You in accordance with the terms and conditions of this Contract."

## MISSOURI

The cancellation section of this Contract is amended to include the following: If this Contract is originally delivered to You by mail, You may cancel this Contract within twenty (20) days after the date the Contract was mailed to You or within ten (10) days if the Contract is delivered at the time of sale and receive a full refund of the Contract price provided no claim has been made under the Contract. If a full refund is due to You under this Contract, a ten (10%) penalty per month will be added to the refund if it is not made within thirty (30) days of return of the Contract to Us. A written notice will be mailed to the Contract Holder within fifteen days (15) of the date of cancellation by the Contract Holder. This Contract is non-renewable. The "What To Do If You Have A Breakdown" provision is amended by adding the following: In the event of an emergency situation essential to public health, safety or welfare and the Administrator cannot be reached, proceed with repairs. But, payment will be made in accordance with the Contract and as soon as reasonably possible, You should report the repairs to the Administrator.

## MONTANA

This section entitled "Arbitration" is deleted. If We cancel this Contract, We will mail written notice to You within at least five (5) days prior to the cancellation. Prior notice is not required for cancellation of nonpayment of the provider fee, a material misrepresentation by You to Us, or substantial breach of duties by You relating to the covered product or its use.

## NEVADA

1. The following language is added to the section entitled "Cancellation of this Contract— By Us":
   "Notwithstanding the foregoing, if this Contract has been in effect for at least seventy (70) days, We will not be entitled to cancel it before the expiration of the term of this Contract or for one (1) year after the Sale Date of this Contract, whichever occurs first, except on any of the following grounds:
   (a) Failure by You to pay an amount when due: (b) Conviction of You of a crime that results in an increase in the service required under this Contract; (c) Discovery of fraud or material misrepresentation by You in obtaining this Contract, or in presenting a claim for service under this Contract; (d) Discovery of: (1) An act or omission by You, or (2) A violation by You of any condition of this Contract, which occurred after the Sale Date of this Contract and which substantially and materially increases the service required under this Contract, or (e) A material change in the nature or extent of the required service or repair that occurs after the Sale Date of this Contract and that causes the required service or repair to be substantially and materially increased beyond that contemplated at the time that this Contract was issued or sold. If We cancel this Contract, We will mail to You written notice of cancellation (stating the date and reason for the cancellation) at least fifteen (15) days before the cancellation date."

2. The paragraph under "Cancellation of this Contract—Refunds and Charges" is replaced in its entirety with the following:
   "You will be entitled to a full refund of the Contract Price if You provide a written notice of cancellation to the Selling Dealer within the first thirty (30) days after the Contract purchase date. If You have not filed a claim under this Contract. If You provide a written notice of cancellation to the Selling Dealer after the thirty (30) days after the Contract Sale Date, or if We or the Lien Holder cancels this Contract at any time, You will be entitled to a prorated refund of the Contract price (less a $50.00 cancellation fee, unless We cancel this Contract, in which case no fee will be deducted) based on the greater of the number of days the Contract was in force or the miles driven compared to the total time or mileage specified on the first page of this Contract under "Coverage Term." Your cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the Vehicle. The term of this Contract for cancellation purposes will be based on the date You purchased Your Contract and the Vehicle mileage on the date purchased. If the Contract price was financed, any and all refunds will be paid to the Lien Holder. If the Contract price was not financed, any and all refunds will be paid to You by the Selling Dealer. In that case, We will provide You with a refund within forty-five (45) days after the Selling Dealer receives Your written notice of cancellation, and if We fail to do so within that time, We will pay You a penalty of 10 percent of the Contract price for each thirty (30) day period or portion of thereof that the refund and any accrued penalties remain unpaid."

3. The following language is added to the end of the last sentence of paragraph 1 under "Our Obligations":
   ", and may include parts that are not made for or by the original manufacturer of the Vehicle."
   This Contract is not renewable.

## NEW YORK

A ten (10%) percent penalty per month shall be added to a refund that is not made within thirty days (30) of return of the Contract to the Administrator. We will mail a written notice with the reason for cancellation to You at least fifteen (15) days prior to the cancellation by Us. Written notice is not required if the reason for cancellation is nonpayment of the cost of this Contract, a material misrepresentation, or a substantial breach of duties by You relating to the covered property or its use.

## NORTH CAROLINA

1. There shall be added to the first page of this Contract in the signature box just above the signature line the following: "THE PURCHASE OF THIS CONTRACT IS NOT REQUIRED EITHER TO PURCHASE OR TO OBTAIN FINANCING FOR A MOTOR VEHICLE."

2. The section entitled "Cancellation of this Contract— Refunds and Charges" is replaced in its entirety with the following:
   "You will be entitled to a full refund of the Contract price if You provide a written notice of cancellation to the Selling Dealer within the first thirty (30) days after the Contract purchase date, and if You have not filed a claim under this Contract. If You provide a written notice of cancellation to the Selling Dealer after the thirty (30) days after the Contract purchase date, or if We or the Lien Holder cancels this Contract at any time, You will be entitled to a prorated refund of the Contract price (less a cancellation fee equal to the lesser of $50.00 or ten percent (10%) of the amount of the prorated refund) based on the greater of the number of days the Contract was in force or the miles driven compared to the total time or mileage specified on the first page of this Contract under "Coverage Term." Your cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the Vehicle. The term of this Contract for cancellation purposes will be based on the date You purchased Your Vehicle and the Vehicle mileage on the date purchased. If the Contract price was financed, any and all refunds will be paid to the Lien Holder. If the Contract price was not financed, any and all refunds will be paid to You by the Selling Dealer."

## OKLAHOMA

1. The section entitled "Cancellation of this Contract — Refunds and Charges" is replaced in its entirety with the following:
   "You will be entitled to a full refund of the Contract price if You provide a written notice of cancellation to the Selling Dealer within the first thirty (30) days after the Contract purchase date. If You provide a written notice of cancellation to the Selling Dealer after the first thirty (30) days after the Contract purchase date, Your refund will be based upon ninety percent (90%) of the unearned pro rata premium. If the Contract price was financed, any and all refunds will be paid to the Lien Holder. If the Contract Price was not financed, any and all refunds will be paid to You by the Selling Dealer."

2. In the event the Contract is canceled by Us, refund will be based upon one hundred percent (100%) of unearned pro rata premium.

3. The section entitled "Arbitration" is deleted.

4. The following disclosure statement is added to the first page of this Contract: "THIS SERVICE CONTRACT IS NOT ISSUED BY THE MANUFACTURER OR WHOLESALE COMPANY MARKETING THE PRODUCT. THIS CONTRACT WILL NOT BE HONORED BY SUCH MANUFACTURER OR WHOLESALE COMPANY."

...ION
. following language is added at the end of paragraph 2 under "Your Obligations"
c.   "If a Covered Part has a Covered Breakdown at any time outside of Claims Department regular business hours, You may take one of the following steps
- Wait until regular business hours and then follow the normal claims procedure outlined above, or
- Authorize and pay for teardown or diagnostic time needed to determine whether Your Vehicle has a Covered Breakdown. If You reasonably determine that You have a Covered Breakdown and You choose to have Your Vehicle repaired, You are responsible for paying for the repair. You must then call the Administrator during the next available regular business hours so that the Administrator may determine whether there was a Covered Breakdown. If the Administrator determines that there was a Covered Breakdown, then We will pay You in accordance with the terms and conditions of this Contract."

## SOUTH CAROLINA
1. Unless otherwise specified on the first page of this Contract, You paid for this Contract in cash. If You financed the Contract Price, the terms of financing are contained in the Installment Contract entered into between You and the Selling Dealer.
2. Any unresolved complaints or questions about this Contract may be addressed to: South Carolina Department of Insurance, P.O. Box 100105, Columbia, SC 29202-3105, (803) 737-6134
3. The section entitled "Cancellation of this Contract—Refunds and Charges" is replaced in its entirety with the following: "You will be entitled to a full refund of the Contract price if You provide a written notice of cancellation to the Selling Dealer within the first thirty (30) days after the Contract purchase date, and if You have not filed a claim under this Contract. In that case, We will provide You with a refund within 45 days after the Selling Dealer receives Your written notice of cancellation, and if we fail to do so within that time, We will pay You a penalty of 10 percent of the Contract price for each month that the refund remains unpaid. If You provide a written notice of cancellation to the Selling Dealer after the first thirty (30) days after the Contract purchase date, or it We or the Lien Holder cancels this Contract at any time, You will be entitled to a prorated refund of the Contract Price based on the greater of the number of days the Contract was in force or the miles driven compared to the total time or Vehicle mileage specified on the first page of this Contract under "Coverage Term." Your cancellation notice must be accompanied by a copy of an odometer disclosure statement or equivalent document verifying the current mileage of the Vehicle. The term of this Contract for cancellation purposes will be based on the date You purchased Your Contract and the Vehicle mileage on the date purchased. If the Contract Price was financed, any and all refunds will be paid to the Lien Holder. If the Contract price was not financed, any and all refunds will be paid to You by the Selling Dealer."
4. The following paragraph is added to the section entitled "Cancellation of this Contract— By Us":
"If We cancel this Contract, We will mail a written notice to You at Your last known address contained in Our records at least fifteen (15) days prior to cancellation. The notice will state the effective date of cancellation and the reason for cancellation. We will not send You advance notice if the reason for cancellation is nonpayment of the Contract price, or material misrepresentation by You to Us, or a substantial breach of duties by You relating to the Vehicle or its use."

## TEXAS
1. Unless otherwise specified on the first page of this Contract, You paid for this Contract in cash. If You financed the Contract Price, the terms of financing are contained in the Contract entered into between you and the Selling Dealer.
2. The following paragraph is added to the section entitled "Cancellation of this Contract— By Us": "If We cancel this Contract, We will mail a written notice to You at Your last known address contained in Our records at least six (6) days prior to cancellation. The notice will state the effective date of cancellation and the reason for cancellation. We will not send You advance notice if the reason for cancellation is nonpayment of the Contract Price, a material misrepresentation by You to Us, or a substantial breach of duties by You relating to the Vehicle or its use."
3. The following sentence is inserted after the first sentence under "Cancellation of this Contract— Refunds and Charges": "In that case, We will provide You with a refund within forty-five (45) days after the Selling Dealer receives Your written notice of cancellation, and if We fail to do so within that time, We will pay You a penalty of ten (10%) percent of the Contract Price for each month that the refund remains unpaid." Pursuant to Section 1304.158, You may request reimbursement directly from the insurer if a refund or credit is not paid before the forty-sixth (46th) day after the date on which the Contract is returned to the Administrator.
4. Any unresolved complaints concerning Us or questions concerning the regulation of service contract providers may be addressed to the Texas Department of Licensing and Regulation at the following address and telephone numbers: Texas Department of Licensing and Regulation, P.O. Box 12157, Austin, TX 78711, (800) 803-9202/(512) 463-6599

## UTAH
1. Coverage afforded under this Contract is not guaranteed by the Property and Casualty Guaranty Association.
2. The Contract purchase price is payable, in full, at the time of purchase.
3. The following language is added at the end of paragraph 2 under "Your Obligations": If a Covered Part has a Covered Breakdown at any time outside of Claims Department regular business hours, You should report the repairs to the Administrator as soon as reasonably possible
4. The following sentence is added to the section entitled "Cancellation of this Contract — By Us": We may only cancel this Contract, for material misrepresentation or substantial breaches of contractual duties, conditions, or warranties. We will mail to You written notice of cancellation at least thirty (30) days before the cancellation date. However, if We cancel this Contract for nonpayment of the amount financed by the Lien holder, We will mail to You written notice of cancellation at least ten (10) days before the cancellation date.
5. Under the emergency repairs section of this Contract, "On the next business day, You should report the repairs to the Administrator" is amended as follows, "As soon as reasonably possible, You should report the repairs to the Administrator."
6. The toll-free number for Dealers Assurance Company is 1-800-282-8913.
7. This Service Contract is subject to limited regulation by the Utah Insurance Department. To file a complaint, contact the Utah Insurance Department.

## VIRGINIA
The definition of "We," "Us" and "Our" under "Definitions" is replaced with the following: "We," "Us" and "Our" refers to Superior Protection Plan.

## WISCONSIN
1. THIS SERVICE CONTRACT IS SUBJECT TO LIMITED REGULATION BY THE OFFICE OF THE COMMISSIONER OF INSURANCE.
2. The following sentences are added to the first bullet point in Item 2 under "Your Obligations" and to item A 26 under "Exclusions— What this Contract does not Cover".
"However, the failure by You to obtain an authorization number from the Administrator prior to beginning a repair will not invalidate or reduce a claim unless We are prejudiced by Your failure to obtain an authorization number. In other words, We will not deny a claim solely because You or Your repair facility failed to obtain an authorization number before beginning a repair."
3. The first sentence under "Other Important Contract Provisions/Limitations — Our Rights Against Others" is replaced with the following:
"If You receive any benefits under this Contract, We will be entitled to all Your rights of recovery against any manufacturer, repairer or other party who may be responsible to You for the costs covered by this Contract or for any other payment made by Us, but only after You have been made whole for Your loss (i.e., You have been fully compensated for Your damages)."
4. Once authorization is obtained, and the repair is completed, all repair invoices and documentation must be submitted to the Administrator as soon reasonably possible.
5. You may reject and return this Contract within fifteen (15) calendar days of the delivery of this Contract for a full refund, less actual costs and/or charges needed to issue and service this Contract.
7. Within the "Your Obligations" section, the following sentence(s) is amended: To make a claim, call the Administrator toll-free at 1-866-410-6748 Claims Department hours are Monday through Friday, 7 a.m. to 7 p.m., Saturday 8 a.m. to 2 p.m. Central Time. CLAIMS MUST BE SUBMITTED AS SOON AS REASONABLE POSSIBLE AND WITHIN ONE (1) YEAR FROM AUTHORIZATION TO QUALIFY FOR REIMBURSEMENT.
8. The section entitled "Your Obligations — Emergency Repairs" is amended with the following: "If emergency repairs covered by this Contract are required outside the Selling Dealer's or Administrator's business hours, You should deliver Your Vehicle to a licensed repair facility and have the necessary repairs performed at a reasonable and customary charge. As soon as reasonably possible and within one (1) year, You should report the repairs to the Administrator. Failure by You to give notice or proof within the time required does not invalidate or reduce the claim unless You are prejudiced by the failure to give notice. To report an emergency repair and obtain a reimbursement, please call the claims number below for instructions. Emergency repairs are only those repairs which if not performed would render Your Vehicle inoperable or unsafe to drive and impair its future operation."

## WYOMING
1. Unless otherwise specified on the first page of this Contract, You paid for this Contract in cash. If You financed the Contract price, the terms of financing are contained in the Service Contract entered into between You and the Selling Dealer.

FORM AWA-XX-XX-05                                    P.8                                    REV 02.15.12

. The following paragraph is added to the section entitled "Cancellation of this Contract — By Us".: "If We cancel this Contract, We will mail a written notice to You at Your last known address contained in Our records at least ten (10) days prior to cancellation. The notice will state the effective date of cancellation and the reason for cancellation. We will not send You advance notice if the reason for cancellation is nonpayment of the Contract Price, a material misrepresentation by You to Us, or a substantial breach of duties by You relating to the Vehicle or its use."

3  If there is a Lien Holder, the refund less a cancellation fee will be paid to You and the Lien Holder.

4  Arbitration will take place in accordance with the Wyoming Arbitration Act.

5  The following paragraph is deleted from the section entitled "Cancellation of this Contract—By the Lien Holder". "You understand and acknowledge that the Lien Holder (if any) has the right to cancel this Contract if the Vehicle is repossessed or destroyed or You are otherwise in default of Your obligations to repay the amount financed by the Lien Holder.

6  The following paragraph is added to the section entitled "Cancellation of this Contract". Service contracts shall require the provider to permit the original service contract holder to return the service contract within twenty (20) days of the date the service contract was mailed to the service contract holder or within ten (10) days of delivery if the service contract is delivered to the service contract holder at the time of sale or within a longer time period permitted under the service contract. Upon return of the service contract to the provider within the applicable time period, if no claims have been made under the service contract prior to its return to the provider, the service contract is void and the provider shall refund the service contract holder, or credit the account of the service contract holder, with the full purchase price of the service contract. The right to void the service contract provided in this subsection is not transferable and shall apply only to the original service contract purchaser, and only if no claim has been made prior to its return to the provider. A ten percent (10%) penalty per month shall be added to a refund that is not paid or credited within forty-five (45) days after return of the service contract to the provider. A cancellation fee is not allowed if the service contract is cancelled during the "free look" period.

14-007218-NZ
FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/4/2014 12:18:44 PM
CATHY M. GARRETT

# Exhibit D

Page 1 of 1

# PACKARD AUTO REPAIR LLC
1880 PACKARD ST
Ann Arbor, MI  48104
Shop Phone: (734) 327-6488
Fax: (734) 468-2420
Email: PACKARDAUTOREPAIRS@GMAIL.COM
Web Address: www.packardautorepair.com

Repair Order

**7374**
Estimate Ref #5,504
Date Printed: 02/03/2014
Printed Time:  2:59 pm

M269274  Ahmad

Time Promised

Hat/Ref.    PACKARD AUTO REPAIR LLC

**CORDOVA, MARLEN**

2008 GMC  ACADIA SLT  V6 3.6L 217CID FI GAS N 7
VIN:

Home:    Work:
Cell:

License
Unit #

Mileage In: 0
Mileage Out: 0
DOM:

Date Written    01/16/2014
Written By:
Save Old Parts: No

| Job Name | Description | Technician | Qty | List | Extended |
|---|---|---|---|---|---|
| **WATER PUMP** | **WATER PUMP - Replace** | | | | |
| Part  AWP-9361 | Water Pump | | 1.00 | 125.53 | 125.53 |
| Labor  280 | Work Requested - WATER PUMP - Replace | | 4.00 | 85.00 | 340.00 |
| Part  SHOP | COOLANT | | 2.00 | 10.85 | 21.70 |
| **RACK AND PINION** | **STEERING GEAR - Replace -** | | | | |
| | **Complete Assembly W...** | | | | |
| Part  64313 | Steering Gear - Without Variable Steering | | 1.00 | 295.72 | 295.72 |
| Labor  280 | Work Requested - STEERING GEAR - Replace - | | 4.50 | 85.00 | 382.50 |
| | Complete Assembly With Transfer Of Parts | | | | |
| Part  MOO ES800286 | OUTER TIE ROD | | 2.00 | 51.79 | 103.58 |
| Note/Title | | | | | |

AN ALIGNMENT IS RECOMMENDED WITH STEERING REPAIRS.

**NOTES**
Note/Title
BAD ENGINE OIL LEAK, WOULD NEED TO CLEAN ENGINE TO PINPOINT THE SOURCE OF THE LEAK

| Payment Date | Type | Method | Amount |
|---|---|---|---|
| | | Payment Totals: | |

Parts:  $546.53
Labor:  $722.50
Sublet:  $0.00
Misc:  $0.00
Discount:  $108.38
Hazmat *  $24.74
Supplies *  $14.45

Tax Total:  $32.79
Invoice Total:  **$1,232.63**

· OUR SATISFACTION IS OUR GUARANTEE

I hereby authorize the above repair work to be done along with the necessary material and hereby grant you and/or your employees permission to operate the car or truck herein described on streets, highways or elsewhere for the purpose of testing and/or inspection. An express mechanic's lien is hereby acknowledged on above car or truck to secure the amount of repairs thereto.

Authorized By _____    Date _____  Time _____

14-007218-NZ

FILED IN MY OFFICE
WAYNE COUNTY CLERK
6/4/2014 12:18:44 PM
CATHY M. GARRETT

# EXHIBIT E

Packard Auto Repair, LLC
1600 Packard St   Ann Arbor  MI 48104
(734) 327-6488

Packard Auto Repair, LLC

To whom it may concern:

Marlen Cordova brought in her new 2008 GMC Acadia because it was making some noises. We found that the vehicle was leaking numerous fluids. The water pump is leaking, the power steering rack is leaking, and the engine is leaking oil. So much oil, that the engine would have to be cleaned then operated to pinpoint the source of the leak. Ms. Cordova bought the vehicle with an extended warranty, but Superior Protection Plan denied the claim because this was a pre-existing condition. Having just purchased the vehicle, we recommended that Ms. Cordova obtain legal advice.





48086

1000



7013 0600 0000 1959 0742

*THE LIBLANG LAW FIRM, PC*

*Attorneys and Counsellors At Law*

*346 Park Street, Suite 200*

*Birmingham, Michigan 48009*

CERTIFIED MAIL RETURN RECEIPT REQUESTED

To:

Credit Acceptance Corporation
RA Charles A Pearce
PO Box 5070
Southfield, MI 48086-5070



RETURN RECEIPT
REQUESTED